## Kutz's Estate.

*Equity—Contract for sale of real estate—Specific performance—
Laches—Failure to make tender—Refusal.*

1. Tender of performance on the part of the plaintiff is pre-
requisite to a decree for specific performance of a contract for the
sale of real estate.

2. In a suit for specific performance, the plaintiff must show
he has performed, or was ready to perform his part of the contract,
and that he has not been guilty of laches or unreasonable delay,
and where the proof leaves the case doubtful the plaintiff is not
entitled to a decree.

3. The granting of specific performance by a chancellor is a
matter of grace, not of right.

4. In a proceeding in the Orphans' Court to compel specific per-
formance of a contract for the sale of real estate owned by a de-
cedent, where it appeared that the relief was not sought for more
than three years after performance was due under the contract,
that the petitioner was a corporation whose board had by resolu-
tion previously granted decedent and others leave to withdraw
from the contract; that no tender of the consideration was made
by the petitioner; that there was no resolution of the board author-
izing the institution of the proceedings and many stockholders of
the petitioner were opposed thereto, and where if the decree prayed
for should be granted, a purchase-money mortgage would have to
be given upon which foreclosure proceedings would in all proba-
bility have been necessary in the near future causing delay and in-
convenience and expense, the court was not in error in refusing
the relief prayed for.

Argued Oct. 4, 1917.  Appeal, No. 139, Oct. T., 1917, by The Laurel Hill Valley Coal & Coke Company and Henry D. Green, from decree of O. C. Somerset Co., 1917, No. 9, refusing specific performance of a contract, in Estate of Cyrenius W. Kutz, Deceased.  Before BROWN, C. J., MESTREZAT, STEWART, FRAZER and WALLING, JJ. Affirmed.

Petition for specific performance of a contract for the sale of real estate.

RUPPEL, P. J., filed the following opinion:

While there has been considerable testimony taken, there is very little dispute as to the facts, and instead of stating the facts separately in order as requested by counsel for respondents, the court deems it sufficient to give a narrative statement covering such facts as are important in the case.

Cyrenius W. Kutz, a resident of Somerset County, was the owner of certain lands and minerals situate in Somerset County and on the 30th day of January, 1911, he executed two articles of agreement one relating to certain lands owned by Mr. Kutz, in fee simple, and the other relating to coal and other minerals. Both agreements are substantially the same in form and are made by Mr. Kutz of the first part, and "Henry D. Green, attorney for a proposed corporation of Pennsylvania, with $50,000 capital stock of the second part." For the several tracts of land owned in the fee simple by Kutz, the consideration was fixed at $12,354, and for the coal and mineral only, the consideration was fixed at $12,604, to be paid "in the following manner: One dollar down at the signing of the agreement, 10 per cent. in capital stock in the proposed corporation above mentioned, and the remainder to be secured by a bond and mortgage of said corporation upon the premises described below, within three years from the date of said mortgage, interest to be paid at 5 per cent. after possession is delivered to mortgagor......And upon payment of said pur-

chase-money provided above, the said party of the first part will at the proper charge of the said party of the second part, make, execute and deliver to the said party of the second part a good and sufficient deed, etc......And it is further agreed by and between the said parties that possession of the said premises shall be delivered to the party of the second part, his heirs or assigns, on the day possession is requested in writing by the said party of the second part, his heirs or assigns, until which time the said party of the first part shall be entitled to have and receive the rents, issues and profits thereof......It is further agreed that the said party of the first part will execute and deliver the deed of conveyance as above mentioned, to the directors of the proposed corporation after a charter has been granted and that upon delivery of such deed, said corporation will execute the mortgage above referred to as part of the consideration, and make out certificates of stock to the said party of the first part for the amount of the purchase-money, which is to be payable in stock; said mortgage after execution and said stock after being issued, is to be placed in the hands of the directors of said corporation with the executed deeds, they to hold the same until the property is sold and thereby money is raised to pay off the mortgages and the amounts due on distribution among the stockholders."

On the 23d of October, 1911, an application was filed for a charter for the Laurel Hill Valley Coal & Coke Company; the purpose of the corporation being stated to be the mining, selling and shipping of coal and other minerals incidentally developed, and the making of coke and its products from such sale, and as far as may be necessary for the purposes of said business, acquiring, holding and disposing of coal, coal lands and other real and personal property, and transacting such other business as is incidental to said purposes. The amount of the capital stock of the corporation was fixed at $50,000 divided into 1,000 shares of the par value of $50 each. Among the subscribers to the capital stock is the Laurel

Hill Lumber Company, 90 shares; C. W. Kutz, 52 shares; Cosmos D. Kutz, 2 shares; Daniel H. Schweyer, 12 shares, and Albert Knabb, 5 shares. The last of the three above-named paid their subscriptions to stock and are the only ones who paid any money on the stock subscriptions. The officers of the corporation sold stock of the company to the amount of $5,000 which was paid into the treasury. This money was the only asset of the corporation. The charter was duly recorded in Berks County but was not recorded in Somerset County.

On the 11th of November, 1911, at a meeting of the stockholders of the Laurel Hill Valley Coal & Coke Company, the following resolution was unanimously adopted: "Resolved, That in the mortgages directed to be given to the company according to the agreement of incorporation, they be made payable on or before July 1, 1914, and it be provided in said mortgages and deeds that the privilege be given to any landowner to withdraw his land after said date, upon cancellation of the mortgage and the shares of stock issued to him on account of the purchase-money."

On the 23d of January, 1912, a meeting of the stockholders of the Laurel Hill Valley Coal & Coke Company, held at Confluence, Pa., C. W. Kutz, George Dumbauld and Jacob Kregar were appointed a committee to prospect a number of tracts of land by examining the present openings, drilling of coal, obtaining surveys, engineers' reports, analyses of the coal, etc., on lands which the corporation intended to purchase; the lands included those of the decedent, C. W. Kutz. This committee expended $3,644.56. No detailed report of the doings of this committee was made until May 5, 1915, when the committee submitted a report showing what had been done, the names of the surveyors and engineers employed, the amount of money expended, etc. This report in two sections, is dated as follows: 5-5-15 as of 7-1-14."

On June 17, 1915, Henry D. Green wrote to C. W.

Kutz stating that the Laurel Hill Lumber Company, a corporation in some way connected with the Laurel Hill Valley Coal & Coke Company, had executed mortgages and stock certificates for the latter company, which were placed in escrow, and Mr. Green with his letter enclosed deeds for Mr. Kutz and his wife to execute in accordance with the articles of agreement of January 30, 1911; and Mr. Kutz is advised in this letter that his deeds upon receipt will be placed with the other agreements and papers in escrow; and the letter proceeds: "In other words, when a purchaser is found and the money paid, it will be paid to the trust company for payment to the property owners according to the terms of the agreement, and no title will pass to purchasers nor will any deed be delivered except upon the conditions set forth in the agreement. In this way the rights of all parties will be perfectly safeguarded. I am preparing deeds to be signed by other landowners according to the terms of their agreements and I will ask you to assist me in having as much of this land put into shape for sale as possible.

On the 30th of June, 1915, Mr. Green again wrote to Mr. Kutz stating that he was waiting for a reply to his letter of June 17th.

On the 1st of July, 1915, Mr. Kutz acknowledges receipt of these letters and says: "Will say in reply that so far as your letter of recent date is concerned and what you ask me to sign I will not do as I consider all options void since July 1, 1914. Had you and others of your committee tried as hard to effect a sale as Dumbauld, Kregar and myself did to get surveys made and prospecting done, we might not now be a company without property to dispose of......I will not sell any of my lands for a worthless mortgage."

No further steps were taken during the lifetime of Mr. Kutz, who died May 16, 1916, and his daughter, Mrs. Barron, was appointed his administratrix. The agreements between Mr. Kutz and Mr. Green purport to have

been signed by C. W. Kutz and Susannah C. Kutz his wife, and in that form were handed to Mr. Green by Mr. Kutz. D. H. Schweyer signed as an attesting witness to Mrs. Kutz. The agreements were not acknowledged before a magistrate, but after the death of Mr. Kutz, Mr. Green acknowledged his signature to the articles of agreement and had same placed upon record in Somerset County.

On the 15th of January, 1917, the administrator of C. W. Kutz presented a petition for an order for the sale of real estate for the payment of debts. The petition sets forth that the debts of the decedent amount to over $55,-000 and the personal property less than $1,300, and asks for the sale of the real estate including the lands and minerals described in the agreement between Mr. Kutz and Mr. Green. An order of sale was granted on the 16th of February, 1917. The real estate described in the order was sold to J. C. Barron, husband of the administratrix for $8,000. Mr. Green for himself and as attorney for the Laurel Hill Valley Coal & Coke Company, filed exceptions to the sale, and also presented the petition for specific performance of contract. There were gross irregularities in the conduct of the sale, and if a proper party in interest had filed exceptions they would doubtless have been sustained, but as we have concluded that neither Mr. Green nor the Laurel Hill Valley Coal & Coke Company has any interest in the estate, we need give the exceptions no further consideration.

The rule for decree of specific performance of contract was served upon the administratrix, the widow, and each of the eight children of the decedent, being all the legal heirs and representatives concerned in the estate. They have all filed answers practically admitting the facts as set forth in the petition, but denying the petitioners' right to specific performance, alleging specifically the resolution of the Laurel Hill Valley Coal & Coke Company fixing the maturity of the mortgage as in 1914,

and averring laches on the part of the petitioner; and also denying authority on part of Mr. Green as a representative of the Laurel Hill Valley Coal & Coke Company to institute and conduct the litigation. The widow, Susannah C. Kutz, filed an answer of similar import, but also in a manner denying her signature to the articles of agreement. This denial in her answer is in the following form: "......I think it is his genuine signature, but there appears upon said agreements with the name of Cyrenius W. Kutz, the name of Susannah C. Kutz. I was the wife of Cyrenius W. Kutz at the date said agreements purport to have been signed by him. My name does not appear on said agreements. The name of the widow of Cyrenius W. Kutz is Susan C. Kutz, and I, the widow of said decedent, have at no time written my name Susannah C. Kutz, and I have no recollection of signing said agreements and I do not recognize the signature purporting to have been signed by Susannah C. Kutz as having been written by me, though there is some resemblance in those signatures with my own genuine signature." The name of Daniel H. Schweyer appears on the agreements as an attesting witness to the signature of Mrs. Kutz; and depositions have been taken to prove the death of Daniel H. Schweyer, and that the signature on the agreement is the genuine signature of Mr. Schweyer; and the agreements in that form, with the name of Mrs. Kutz appearing thereon after the name of C. W. Kutz, were handed to Mr. Green by Mr. Kutz. Mr. Kutz was a very reputable citizen, and therefore for the purposes of this case, we find as a fact that the signature on the agreements is the genuine signature of Mrs. Kutz.

Beginning with September 8, 1913, Mr. Kutz contracted indebtedness amounting to $22,472.82, and this indebtedness was subsequently increased until the amount with interest totaled $36,372.64 as of January 1, 1917. For this indebtedness Mr. Kutz executed a mortgage on his real estate including that in controversy here, to his son-in-law, J. C. Barron for himself and as trustee for

the other creditors. The assets of the Laurel Hill Valley Coal & Coke Company were all expended in prospecting on lands of Mr. Kutz and others, spoken of as the pool, for the purposes of ascertaining the extent and quality of the coal and minerals thereon. The certificates of stock of the Laurel Hill Valley Coal & Coke Company for Mr. Kutz, as referred to in the optional agreements, were never tendered to Mr. Kutz, in fact were never executed by the corporation. No formal action has been taken by the corporation authorizing Mr. Green to prosecute these proceedings. In fact a number of the stockholders were called as witnesses and by their testimony indicated their hostility to this proceeding. There is no prospect for an immediate sale of the coal by the Laurel Hill Valley Coal & Coke Company were it to become the owner of the premises. Under these circumstances we are decidedly of the opinion that the relief sought for should not be granted. Were the parties reversed and the estate of Mr. Kutz seeking to enforce the contract there would be little prospect of success.

The agreement with the attending circumstances therefore lacks mutuality, which is fatal to the petitioners' case: Meason v. Kane, 63 Pa. 335.

The vendee has slept too long on its rights, and under all the facts of the case has been guilty of laches.

"In a suit for specific performance, the plaintiff must show he has performed, or was ready to perform his part of the contract, and that he has not been guilty of laches or unreasonable delay, and where the proof leaves the case doubtful, the plaintiff is not entitled to a decree": Bouvier's Law Dictionary, page 3106; DuBois v. Baum, 46 Pa. 537; Nickerson v. Nickerson, 127 U. S. 668 (L. Ed. 314) ; Wesley v. Eells, 177 U. S. 370 (L. Ed. 810).

Tender of performance on part of the petitioner is a prerequisite to a decree of specific performance of contract: DuBois v. Baum, supra.

"When a man has an option upon property, and has

laid by for several years without exercising it, and it has greatly enhanced in value, if he claim a conveyance of it; he should at least show a tender of the purchase-money, or that his appointee has the means to pay for it": Kellow v. Jory, 141 Pa. 144.

"It is well settled that to entitle a plaintiff in ejectment —founded on an equity only—to recover, he must not only tender the money before suit brought, but he must show his readiness to perform by having it in court ready to be paid in the event of a verdict in his favor": Dwyer v. Wright, 162 Pa. 405.

Furthermore, the granting of relief by a chancellor is a matter of grace and not of right. True, the court must exercise a legal discretion, not rule the matter arbitrarily, but be governed entirely by equitable principles: Burk's App., 75 Pa. 141; Rigg et al. v. The Reading & S. W. Street Ry. Co., 191 Pa. 298; Federal Oil Co. v. Western Oil Co., 121 Fed. Rep. 674; Nickerson v. Nickerson, supra; Wesley v. Eells, supra.

In this case the article of agreement provided for the securing of the purchase-money by a mortgage on the property to the vendor, and as is shown by the agreement and the subsequent correspondence, it was the purpose and intention of the parties at the time to sell the property, not to operate it, and it was expected that the mortgage should be paid out of the proceeds of such sales. The agreement itself is silent as to the time of the delivery of deed and security by mortgage, therefore the law would fix a reasonable time, in the absence of any proof; but the parties themselves seem to have considered that three years was a reasonable time; in fact, the agreement provides that the mortgage is to be made payable in three years from its date, and it is fair to presume that the parties contemplated an early issuing of the stock and exchange of papers. The charter was promptly obtained; then the action of the corporation fixing the first of July, 1914, as the time for the limitation of the mortgages, is in harmony with what appears to have been the understanding at the time the papers

were executed. Within that time no demand was made of Mr. Kutz, and when a demand was made upon him a year later he promptly took advantage of the resolution passed by the stockholders of the petitioning corporation. From the light that we have now, were we to grant a decree of specific performance, it would simply mean that a deed should be executed to the Laurel Hill Valley Coal & Coke Company and a mortgage given by that company for the bulk of the purchase-money with no immediate prospect of a sale of the land in view, and with a strong probability that resort would have to be had to legal proceedings to enforce the payment of the mortgage, and probably result in a sheriff's sale of the property, thus entailing great expense, long delay and unnecessary trouble.

The court refused the relief prayed for. The Laurel Hill Valley Coal & Coke Company and Henry D. Green appealed.

*Errors assigned* were as follows:

1. The court erred in not decreeing the specific performance prayed for by the petitioner.

2. The court erred in admitting a great deal of testimony entirely immaterial and irrelevant to the questions involved.

*Henry D. Green,* with him *C. F. Uhl* and *H. F. Yost,* for appellants.

*J. A. Berkey,* for appellee.

PER CURIAM, January 7, 1918:

The majority of the court are of opinion that this decree should be affirmed on the opinion of the learned court below dismissing the exceptions to the sale and to the petition for specific performance of contract. Even if there were any merit in the appeal it could not be sustained for the disregard of the rule relating to assignments of error. Neither of the two is in proper form.

Decree affirmed at appellants' costs.