# Freeman *v.* Lawton, Appellant.

614

Argued January 7, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Guy W. Davis*, for appellant.

*Louis A. Bloom*, with him *Milton M. Bennett* and *Albert Blumberg*, for appellee.

OPINION BY MR. JUSTICE LINN, March 25, 1946:

Defendant appeals from judgment for plaintiff in a trial by a judge without a jury. The plaintiff declared on a promissory note in the sum of $4,000 dated August 4, 1925, at Miami, Florida, for payment in that city in thirty-six equal monthly installments, with interest, the first due September 4, 1925. The payee was the Commercial Bank and Trust Company, Trustee, of Miami. The note was part of the consideration for a written agreement by which the payee agreed to convey to the defendant certain land in Florida; in this instrument defendant agreed to pay the sum of $5,000, of which $1,000 was to be paid in cash and the balance "evidenced by one note of the said [defendant] of even date herewith . . ." in thirty-six equal monthly installments at the time specified in the note. Paragraphs 7 and 9 of the agreement provided: "7. It is further agreed that if de-

fault shall be made by the Vendee as to any of the payments above set forth, time being hereby made an essential part hereof, or if the Vendee shall breach any of these covenants as set forth in this agreement, and such default or breach shall continue for the space of 30 days, then and in that event all payments heretofore made upon said property by the Vendee shall be forfeited and the same may be retained by the Vendor as liquidated damages, and the Vendor shall be entitled to re-enter and take possession of the said premises as of its former estate without let, suit or hindrance on the part of the Vendee and the Vendee hereby waives any and all right of notice as to such default or breach and agrees that at the expiration of the period above named Vendee shall be deemed and held to have abandoned the said property and this contract shall be deemed cancelled and terminated."

"9. It is further agreed that the Vendee takes no title by this contract and acquires no interest or estate in said lands, whether of freehold or otherwise, until after the delivery of the deed of conveyance and until such time the title to said lands, in fee simple, is retained in the Vendor."

The note and the agreement were under seal. The defendant made the down payment of $1,000 and paid four installments aggregating $444.48 on account of principal and $102.22 on account of interest. The note matured August 4, 1928; after maturity it was transferred by the payee to A. Freeman, the plaintiff, subject to defenses good against the payee. Plaintiff tendered a deed on August 21, 1942.

The learned judge properly held that the note and the agreement must be considered as a single contract: compare *Sprenger v. Litten,* 142 Pa. Superior Ct. 194, 15 A. 2d 527. The suit is for the recovery of the purchase price of real estate. Such a suit is in the nature of an equitable proceeding for specific performance and is governed by the same equitable principles applied to

such suits in chancery. In *Heights Land Co. v. Swengel's Estate,* 319 Pa. 298, 300, 179 A. 431, we said, ". . . if either party wishes to enforce the contract, he must move to do so without unreasonable delay after the time for completed performance of the contract has passed; if he is guilty of lack of due diligence in failing to institute or prosecute his proceeding, the equitable doctrine of laches will apply: DuBois v. Baum, 46 Pa. 537; Kutz's Estate, 259 Pa. 548; Fidelity-Phila. Trust Co. v. Simpson, 293 Pa. 557, 585. These well-settled principles are conclusively determinative of the instant case."

Paragraph 7 of the contract, containing the forfeiture provision provided that the "vendee shall be deemed and held to have abandoned the said property and this contract shall be, deemed cancelled and terminated." Mere default in payment of installments did not of itself constitute cancellation, though furnishing cause for such action; to produce that result express or implied assent of the vendor was necessary. The legal effect of the provision was to grant an option to the vendor to cancel and terminate the contract: *Cochran v. Pew,* 159 Pa. 184, 28 A. 219; *Cape May Real Estate Co. v. Henderson,* 231 Pa. 82, 79 A. 982, and the cases on the subject cited in those opinions. It is unnecessary to consider the exact date on which, by words or conduct, the vendor may be said to have terminated the contract or abandoned his rights under it. The plaintiff, having taken the note after maturity, is in the same position in which the vendor would have been if it had brought the suit.

As the suit is for specific performance and subject to equitable defenses, we next inquire whether equity will enforce this contract 16 years after the first default and 14 years after the last payment should have been made, no deed having been tendered until August 21, 1942, and no suit having been brought until October 13, 1942. Plaintiff contended that as the Florida statute of limitations allowed a period

of 20 years his action was not barred.[1] But whether the suit was in time is not to be determined by the law of Florida; the law of the remedy must be found in this Commonwealth: see *Newton's Estate*, 46 Pa. Superior Ct. 40, 44; *Rosenzweig v. Heller*, 302 Pa. 279, 285, 286, 153 A. 346; Restatement, Conflict of Laws, section 603; Beale, Conflict of Laws, section 603.1. The question then is whether the vendor and its assignee plaintiff, by their delay in tendering a deed and bringing suit for the balance of the consideration, lost their right to proceed in equity in this jurisdiction. Laches may constitute a defense to the assertion of an equitable right which would not be barred at law by the statute of limitations: cf. *Bangert v. Provident Trust Co.*, 314 Pa. 442, 446, 171 A. 564; *First Nat. Bank v. Coal Co.*, 332 Pa. 394, 396, 3 A. 2d 350. The reason for this rule is thus stated by *Williston, Contracts*, section 695, "Courts of equity refuse to give relief to a plaintiff who has been guilty of such delay in asserting a right of action after it has arisen as to make the assertion unjust. If he has led the defendant to believe that the right will not be asserted either by word or conduct, this circumstance will have an important bearing on the question of inexcusable delay; but as in the case of election, it is not essential that the defendant should have assented to any promise or proposition, or relied on any statement of the plaintiff. If the plaintiff said to the defendant every day from the time when his claim first arose, 'I am going to sue you very soon,' so that no reliance on misleading conduct could be urged, delay might none the less be fatal if a court of equity thought the plaintiff had remained inactive so long that it would be an injustice to allow recovery. The doctrine of laches is peculiar to courts of equity and is not ground for an equitable injunction of legal rights. Accordingly,

---

[1] At the trial, the parties agreed to certain stipulations: one of them was: "It is agreed that the statute of limitations is not controlling in this case."

it is only an equitable remedy to enforce a legal right, or an equitable right which is wholly unrecognized by a court of law, which can be thus barred. The fact that a Statute of Limitations is applicable to suits to enforce such equitable remedies or rights does not make the doctrine of laches unnecessary, since it may occur in cases where the Statute would not bar relief."

The condition of the real estate market along the Atlantic seaboard at the time this contract was made and in the years immediately following, as affected by the depression operating on the rights of both parties at the time of default and in the subsequent years, is a fact which we must notice. The delay, in those circumstances, was highly prejudicial to the defendant, and constitutes an equitable defense to this suit.

The plaintiff relies on *Transbel Investment Co. Inc. v. Scott*, 344 Pa. 544, 26 A. 2d 205. The decision in that case not only does not support the plaintiff's argument on the record before us but shows clearly the distinction between an action at law on the note itself and an action, such as the one under review, in which the record shows that while plaintiff's statement declared as at law, the issue framed and tried was whether specific performance would be enforced in the circumstances appearing. In the *Transbel Investment Co.* case, the terms of the contract of sale were not before this court nor was the action considered as one for specific performance. The opinion limited the discussion (as provided in Rule 50) to "the only three questions which are stated as being involved." The first and second dealt with the plaintiff's being a holder in due course, points not involved in the present case, and the third with laches as applied in suits for specific performance; it was held that on the theory on which the suit was brought and tried that question did not arise. In the present case the court had before it the note and the agreement of sale and properly held that they must be dealt with as a single contract; that contract was the basis of the suit and required the ap-

plication of the equitable defense, not applicable, for the reasons stated, in the *Transbel Investment Co.* case. Judgment reversed and here entered for defendant.