## Oldhouser v. Stauffer

*John T. Miller*, for plaintiff.

*Spencer R. Liverant* and *Robert J. Stewart*, for defendant.

ATKINS, J., June 25, 1959.—This matter is before the court on a motion by defendant for judgment on the pleadings. From the pleadings we ascertain the following facts:

On September 29, 1944, Mrs. Anne Elliot executed a document in writing, reading as follows:

"This is to certify that I am obligated to pay to Mrs. Monserrat Brown the sum of Six Thousand ($6000.00) Dollars U. S. Currency, which shall be paid within sixty days after the cessation of hostilities.

"I am making this note acting under the authorization from my husband, Charles A. Elliot, the said authorization is hereto attached and made an integral part hereof."

Attached to the document is the following statement:

"This is to certify that I authorize my wife to negotiate any loan payable after the war."

(Signed) "Charles A. Elliot"

On December 29, 1953, this instrument was assigned to Wilson H. Oldhouser, the present plaintiff. The complaint was filed August 19, 1955, after suit had been started by summons on July 14, 1955. Plaintiff in the original complaint alleged that hostilities ceased on August 14, 1945, and defendant in her answer admitted this allegation. Subsequently, a stipulation was filed by the parties wherein plaintiff's complaint was amended to allege in paragraph 5 "hostilities ceased on signing of the peace treaty with the Imperial Japanese Government on April 15, 1952." The corresponding paragraph of defendant's answer was amended by the stipulation, as follows: "It is denied that hostilities ceased upon the signing of the peace treaty with the Imperial Japanese Government on April 15, 1952, but it is contended on the other hand that hostilities ceased on August 14, 1945."

The same allegations appear in defendant's answer raising new matter and plaintiff's reply thereto. In her new matter, defendant has interposed the defense of the statute of limitations (Act of March 27, 1713, 1 Sm. L. 76, 12 PS §31), which provides that in actions of this type suit must be begun within six years from the date the cause of action arose. The pleadings also set forth that the statute of limitations for this type of action in the Philippine Republic is 10 years.* Defendant has also raised the question of whether on a construction of the written obligation the obligation was that of Mrs. Elliot or of her husband, Charles Elliot. From the pleadings we learn that Charles Elliot died a prisoner of war in a Japanese prison camp and that Mrs. Elliot has since remarried to one Kenneth Stauffer. We feel that it is not necessary under the pleadings in this case to determine whether the obliga-

---

* The instrument here was executed and delivered in the Philippine Islands.

is that of Mrs. Elliot, now Stauffer, or whether it was the obligation of her late husband, because in any event the action has been barred by the statute of limitations.

It is well settled in Pennsylvania that the statement contained in the A. L. I. Restatement of the Conflict of Laws, §603, as follows: "If the action is barred by the statute of limitations of the forum, no action can be maintained though action is not barred in the state where the cause of action arose," is the law of Pennsylvania: Rosenzweig v. Heller, 302 Pa. 279; Freeman v. Lawton, 353 Pa. 613. Under these cases, the six-year statute of limitations in force in Pennsylvania applies, since the instrument was not under seal.

We therefore must determine what is meant by the phrase "cessation of hostilities." We have found no case in the appellate courts of the Commonwealth construing this phrase, although in Northumberland County Controller's Report, 72 D. & C. 593, the court there held that the cessation of hostilities refers to the termination of open and hostile warfare and that this occurred on August 14, 1945. This, of course, was the date when the actual "shooting war" with Japan ceased. The formal surrender by the Japanese commanders occurred on September 2, 1945. The President of the United States, by proclamation, proclaimed the cessation of hostilities of World War II occurred at 12 noon December 31, 1946. Neither of these latter two dates are alleged in the pleadings as the date of cessation of hostilities. The formal peace treaty with the Japanese Government was entered into on April 15, 1952. This question has been before the courts of other jurisdictions and we have found no case holding that the cessation of hostilities occurred as late as April 15, 1952.

In Mantzoros v. State Board of Equalization, 87 Cal. App. 2d 140, 196 P. 2d 657, the liquor laws of California provided for the suspension of the section of the

act regarding the closing hours of licensed premises until six months after the cessation of hostilties in all wars in which the United States is now engaged. The court there held that the cessation of hostilties occurred on December 31, 1946. This case was decided in 1948. The court pointed out that technically a state of war still existed because there had been no formal peace treaty signed between the governments of the belligrent nations, but construed the term "cessation of hostilities" to refer to the actual cessation of hostile activities.

In Samuels v. United Seamen's Service, Inc., 68 F. Supp. 461, a case decided in 1946, the court was called upon to construe a lease which by its terms was to commence on September 15, 1943, and to "extend for a period of six months from and after the cessation of hostilities in the present war with Japan." In that case plaintiff claimed the hostilities ceased August 14, 1945, and that therefore the lease had terminated. The court held that hostilities had not yet ceased as of the date of its opinion, namely, October 30, 1946.

In Boston Penny Savings Bank v. Stoneholm Co., Inc., 323 Mass. 662, 83 N. E. 2d 885, there was a mortgage with an accompanying note, providing for the payment of interest at three percent per annum with monthly payments to be made on account of the principal. By a separate agreement, the parties agreed that the note should bear interest at the rate of two percent per annum, and that there should be required no payments on account of the principal "until six months after the cessation of hostilities with Germany and Japan." The matter was before the Supreme Judicial Court of Massachusetts on a petition for declaratory relief as to the construction of this language. The court there held that hostilities ceased September 2, 1945, the date of formal surrender, and that the parties were using the words "cessation of

hostilities" in their ordinary rather than their technical sense.

In Girdler Corp. v. Charles Eneu Johnson & Co., 95 F. Supp. 713, United States District Court for the Eastern District of Pennsylvania held that hostilities ceased September 2, 1945, and indicated that had the successful party insisted on the date of August 14, 1945, the court would have held that hostilities actually ceased on that date. The judgment in this case was affirmed by the Circuit Court of Appeals for the Third Circuit, in 194 F. 2d 533.

It is necessary to interpret this language in the light of the time at which the document was executed. At that time the phrase "cessation of hostilities" was quite commonly used and the usual interpretation placed on it was with reference to the cessation of the actual combat as opposed to the idea of a more formal governmental action of the ratification of a formal treaty of peace.

In this case, if we accept the date of August 14, 1945, or even if we were to accept the two latter dates accepted by some of the courts, as indicated above, namely, September 2, 1945, or December 31, 1946, and compute the time from 60 days after either of those three dates, more than six years would have elapsed before July 14, 1955. The only date that would bring the action within the six-year period of our statute of limitations would be if we were to accept the date of April 15, 1952, and, as previously indicated, there has been no court, so far as we have been able to determine, that has accepted that date as the date of cessation of hostilities. We therefore hold that this action is barred by the statute of limitations, and we enter the following order.

And now, June 25, 1959, at 9 a.m., the motion of defendant, Anne Newman Elliot Stauffer, for judgment on the pleadings, is granted and judgment is

entered for defendant and against plaintiff, with costs of suit. Exception is granted to plaintiff to the action of the court in this regard.

