## Miller v. Stimpson

*John Wills Beach,* for plaintiffs.
*Samuel E. Teeter,* for defendants.

SPICER, *P.J.,* July 28, 1981—Plaintiffs have filed a complaint in equity seeking specific performance of a contract for the conveyance of a ten acre tract of land in Freedom Township, Adams County, Pa. Included as count II in the complaint is an action in assumpsit for liquidated damages provided by the contract.

It would appear that plaintiffs, who are husband and wife, reside in Adams County, and defendants, who are husband and wife, reside in London, En-

gland. The agreement in question was made September 24, 1980 and provided that settlement was to occur on or before November 30, 1980. There were several contingencies contained in the agreement including the requirement that plaintiffs obtain satisfactory percolation tests and township subdivision approval.

The complaint alleges that subdivision approval was obtained. It is silent about the results of a percolation test. It generally alleges, in paragraph nine, as follows:

All conditions precedent and contained in the aforesaid Agreement of Sale have been met, have been waived by defendants aforesaid conduct or have been prevented by the defendants aforesaid conduct.

Paragraph seven alleges:

On or about November 30, 1980, plaintiffs were informed by their agents, Century 21, Par Real Estate and Randall B. Inskip Real Estate, Inc., that defendants had disaffirmed and attempted to rescind the aforesaid Agreement of Sale and demanded return of their aforesaid deposit monies.

Service of the complaint was effectuated by registered mail, restricted delivery, return receipt requested. Attached to the sheriff's return of service were two receipt cards. It would appear to our unexpert eye that both receipts were signed by the same person and that the signature reads "F. W. Stimpson." The court hesitates to comment on the legibility of anyone's signature since the undersigned's signature is frequently compared to a polygraph with a short circuit. Nonetheless, it is not easy to ascertain who purported to sign the return receipts.

Defendants have raised a host of challenges to

the complaint and to the jurisdiction of this court through preliminary objections. We will discuss the complaint and service in light of these allegations.

Defendants do not contend that this court totally lacks jurisdiction. Indeed, it would appear this forum has in personam jurisdiction over defendants since they executed the contract here and the land which is the subject of the contract is here. The Uniform Interstate and International Procedure Act, 42 Pa.C.S.A. §5321 et seq., gives this court in personam jurisdiction.

Defendants argue, however, that service was improperly made and cannot become the basis for the exercise of our jurisdiction. The argument can be simplified to say that since it is obvious that one person signed both cards, and it cannot be determined which defendant signed, it cannot be said that either defendant signed. Plaintiffs, on the other hand, argue that defendants obviously received the complaints; otherwise we would not be here disposing of preliminary objections, and therefore, defendants have waived the right to object to jurisdiction.

Service by mail is authorized by the act, supra. It has been said that when a statute specifies the mode of service by mail, the provisions must be strictly followed and it does not matter that defendants ultimately receive a copy if the statutory procedure has not been followed: 62 Am.Jur 2d, Process §65. It also should be pointed out that courts have upheld service when statutes mandate mailing and do not mention receipt even when defendants do not actually receive the complaint. Id.

However, our statute requires receipt when service is effectuated by mail. Section 5323(b) supra, provides in part that when "service is made by mail, proof of service shall include a receipt signed by the

addressee or other evidence of personal delivery to the addressee satisfactory to the tribunal."

If we believe our somewhat suspect eyesight, it would appear that Mr. Stimpson has been properly served. As to Mrs. Stimpson, we note that the card carrying her name, contains the following, "This receipt must be signed by the addressee or by a person authorized to do so by virtue of the regulations of the country of destination . . . "

Defendants have never said they were not served. They have submitted, instead, that plaintiffs have failed to show service. At this point in the case, we hold that the sheriff's return sets forth satisfactory proof of receipt and proper service. Therefore, the objection to jurisdiction based upon service is dismissed.

Defendants argue that plaintiffs should not be allowed to join an action in equity with an action in assumpsit. It has been said, "Plaintiff may join an equitable cause of action and an alternate nonequitable cause, even though the latter could conceivably be transferred to the law side of the court if the former was not sustained." 5 Goodrich-Amram 2d §1508:1. This objection is dismissed.

We next consider the argument that plaintiffs are essentially suing for the purchase price and there is a full and adequate remedy at law.

Authorities have made it clear that a seller may seek specific performance only when there are special circumstances warranting equitable jurisdiction. The complaint does not allege any special circumstances, say defendants, and plaintiffs are not entitled to equitable relief.

Plaintiffs concede that some opinions contain language justifying defendants' position. For example, the Supreme Court, speaking through

Justice Manderino, said in the case of Trachtenburg v. Sibarco Stations, Inc., 477 Pa. 517, 522, 384 A. 2d 1209, 1211, 1212 (1978), the following:

"One, the seller can sue at law for damages, the measure of damages being the full contract price minus the market value of the land on the date of breach, less any payments received. See McConaghy v. Pemberton, 168 Pa. 121, 31 A. 996 (1895); Harris v. Harris, 70 Pa. 170 (1871); 5 Corbin on Contracts §1098A (1951). See generally 32 P.L.E. Sales of Realty §171 (1960), and cases cited therein.

"Two, in limited situations, specific performance might be available to a seller who could show that the legal remedies were not sufficient to put the seller in the same position as if the buyer had not breached the contract. Although at least one early case intimated that specific enforcement was available to a seller as a matter of course so long as good title could be conveyed, Moss v. Hanson, 17 Pa. 379, 382 (1851), Kauffman's Appeal, supra, 55 Pa. 383 (1867), established the rule that where the action for specific performance is simply to recover the purchase price, and nothing in the circumstances of the case require the aid of chancery to give effect to the contract, equity will not entertain it . . .

"The reason the equitable remedy of specific performance has been unavailable to a seller of real estate in this Commonwealth is that the functional equivalent of specific performance—an assumpsit action at law for the purchase price of the land and other damages—is a third remedy which has always been available to the seller in our common law courts. See Freeman v. Lawton, 353 Pa. 613, 46 A. 2d 205 (1946); Heights Land Co. v. Swengel's

Estate, 319 Pa. 298, 179 A. 431 (1935); Tripp v. Bishop, 56 Pa. 424 (1868). See generally 32 P.L.E. Sales of Realty §173 (1960), and cases cited therein. Implicit in our cases refusing specific performance is the recognition that because an action at law for the price was available to the seller, and such an action is, in effect, an action for specific performance, this legal remedy was indeed adequate. The principle is best expressed by a leading commentator on contract law:

"'It is clear that, if the common law court [enables] the vendor to maintain a debt action for the full price, as well as for damages . . . , his remedy at law should be regarded as complete and adequate. Judgment for the full price is identical with a decree for specific performance.' 5A Corbin on Contracts §1145, at 139 (1964) (footnote omitted).

"See also Freeman v. Lawton, 353 Pa. 613, 615-16, 46 A. 2d 205, 206 (1946)."

Plaintiffs argue, however, that the same court, speaking through Justice Nix, retreated somewhat from this position in Harris v. Dawson, 479 Pa. 463, 466, 388 A. 2d 748, 749 (1978), when it said: "As a general rule the seller of land upon a breach by the buyer has the option of tendering a deed and suing for specific performance or of instituting a suit in assumpsit for damages resulting from that breach."

While there may be some apparent inconsistency in the language of the two opinions, footnote 1 of Harris makes clear that both opinions are stating the same rule. That footnote reads in part:

"'The action at law in assumpsit for the purchase price is a familiar remedy available, under our blended system of law and equity, to the vendor of land as a substitute for a bill in equity for specific

performance of the contract of sale. Indeed, by an application of the rule that equity will not act where there is an adequate remedy at law, a bill in equity whose object is simply to enforce payment of the purchase money will not be entertained: Kauffman's App., 55 Pa. 383; Dech's App., 57 Pa. 467; Smaltz's App., 99 Pa. 310; Dorff v. Schmunk, 197 Pa. 298, 47 A. 113. The same principles which govern the remedy in equity apply with equal force to the remedy at law . . . '"

One may ask, as do plaintiffs, if it looks, acts, and smells like equity, why not leave it equity? We have no better answers than first, that's not what the rule is, and second, both parties are entitled to a jury trial in assumpsit.

At any rate, we will sustain the objection to equitable jurisdiction and transfer this case to the law side of the court.

These objections have been either procedural or jurisdictional and we must now consider the objections to the complaint itself and to plaintiffs' cause of action.

As we have previously noted, the contract in question is for the sale of land. The following wording appears in the contract:

NOTICE TO BUYER: If there is currently no existing community sewage system available: Section 7 of the Pennsylvania Sewage Facilities Act provides that person shall install, construct, request bid proposals for construction alter, or occupy any building or structure for which an individual sewage system is to be installed without first obtaining a permit.

You should contact the Sewerage Enforcement Officer of . . . see Schedule "A"

The writing, referred to as "Schedule A" in the contract provided, in part:

WHEREAS: buyers intend to build on property in the next 6 years. The sellers are to have land perced for the purpose of installing a standard on-site septic system or a sand mound system. The perc test is to be at the sellers' expense.

In the event any of the above contingencies are not met, this agreement shall be null and void, downpayment refunded to buyers and all parties are to be held harmless.

A recent amendment to the Pennsylvania Sewage Facilities Act of January 24, 1966, P.L. (1965) 1535, as amended, 35 P.S. §750.7a, requires that every contract for the sale of real estate contain a notice concerning the availability of a community sewage system or be unenforceable. The section reads in part:

"(a) Every contract for the sale of a lot as defined in section 2 for which there is no currently existing community sewage system available shall contain a statement in the contract clearly indicating to the buyer that there is no community sewage system available and that a permit for an individual sewage system will have to be obtained pursuant to section 7. The contract shall also clearly state that the buyer should contact the local agency charged with administering this act before signing the contract to determine the procedure and requirements for obtaining a permit for an individual sewage system if one has not already been obtained. For purposes of this section the terms 'community sewage system' and 'individual sewage system' shall be construed to exclude any drainage system for the control of surface water or the control of storm runoff water.

"(b) Any contract for the sale of a lot which does not conform to the requirements of subsection (a) shall not be enforceable by the seller against the buyer. Any term of such contract purporting to waive the rights of the buyer to the disclosures required in subsection (a) shall be void." (Footnotes omitted.)

Defendants make two arguments in this regard. First, that the law requires such notice be given before a contract is made. Second, that the notice be given exactly as the law requires. Since the notice is part of the contract, defendants argue that it was not given before execution. We reject this argument.

Their second argument that the notice fails to' strictly comply with the act merits more attention. In light of the purposes of the act, we determine that its provisions must be strictly, though reasonably, applied against sellers.* Using this standard, we find that the contract essentially complies with the act's requirements. Mention is made of the the Sewage Enforcement Officer and the contract requires plaintiffs to obtain satisfactory percolation tests as a condition precedent. We, therefore, dismiss this objection.

Defendants next argument is that paragraph nine of the complaint does not sufficiently allege a waiver or excuse of the performance of conditions precedent. As we have mentioned earlier, paragraph seven alleged that plaintiffs were told that defendants were attempting to rescind the contract. Plaintiffs argue that this sufficiently alleges

---

*"Counsel have cited no cases on point but the court applies the same rule as is applied in other statutory situations. See Frost v. Metropolitan Life Insurance Co., 337 Pa. 537, 12 A. 2d 309 (1940)."

how plaintiffs were prevented or excused from performing all conditions precedent.

The performance of conditions precedent may be alleged generally under Pa.R.C.P. 1019 (c). There is authority that waivers, failure or excuse must be more particularly alleged. McKinney v. Earl L. Cump Inc., 2 Adams 132 (1960).

We must take conditions as they come and apply a common sense rule to them. Obviously, conditions that are performed at settlement cannot be performed in the absence of a settlement. However, conditions that are performed prior to settlement, such as the obtaining of percolation tests, must be viewed differently.

Plaintiffs have particularly alleged that subdivision approval has been obtained. The complaint is silent about percolation tests. Thus, one might be tempted to conclude that such tests were not performed and that the complaint has not sufficiently alleged a waiver or excuse. Had plaintiffs merely alleged that all conditions precedent had been fulfilled, Rule 1019 (c) would require the objection to be dismissed. The complaint does not say this however. In the very least, we think plaintiffs should allege which conditions have been waived, excused, or prevented.

Therefore, the objection will be sustained and plaintiffs required to file an amendment. We want to point out that plaintiffs must be in a position to perform if they are successful in the quest for the purchase price.

Defendants' last objection is essentially based upon the statute of frauds. Defendants contend that the description is too vague for the contract to be enforceable and that parol evidence will be inadmissible to prove otherwise. Plaintiffs, on the other hand, argue that parol evidence will be admissible because the tract in question is certain.

The contract generally describes the property as (1) a ten acre tract, (2) having frontage of not less than 513 feet and a depth of not less than 850 feet, (3) being a part of a larger tract described on deed book 346 page 260 and (4) has "dimensions subject to publication survey data by Adams County Surveyors."

We recently discussed the statute of frauds in Bucher v. Slaybaugh, 23 Adams 48 (1981). As we noted in that opinion, if the subject matter of the contract is certain, parol evidence is admissible to identify it. If, however, there are several properties which fit the same description, or if a surveyor would be selecting one tract out of several possibilities, parol evidence would be inadmissible.

It might appear from the language in the contract that a surveyor could pick any numbers of ten acre sites. On the other hand, it might be possible that a lot of the minimum frontages and depth specified would fit on only one place in the larger tract.

The matter is not so free from doubt to enable us to sustain defendant's demurrer. They may still raise the issue in new matter under Rule 1028.

We, accordingly dismiss this objection and enter the attached order.

## ORDER

And now, July 28, 1981, the objection to equitable jurisdiction is sustained and the case is transferred to the law side of this court to be considered in action in assumpsit. The objection to allegations regarding conditions precedent is also sustained. Plaintiff shall have 20 days from this date in which to file an amendment to the complaint or an amended complaint in conformity with this opinion.

Otherwise, the preliminary objections are over-ruled.