# Shaffer's Estate.

*Statute of limitations—Cause of action—Conflict of laws—Act of May* 22, 1895, *P. L.* 112.

1. A cause of action which arose in another state and is barred by the statute of limitations, is not saved by the Act of May 22, 1895, P. L. 112, which provides "that in all civil suits and actions in which the cause of action shall arise in this state, the defendant or defendants in such suit or action, who shall have become nonresidents of the state after said cause of action shall have arisen, shall not have the benefit of the statute of this state."

2. The phrase "cause of action" as used in the statutes fixing the jurisdiction of the courts according to where the cause of action arises, means that which creates the necessity for bringing the action. It arises when that is not done which should have been done and that is done, which should not be done.

*Statute of limitations—Promise to pay—Evidence.*

3. In order to relieve a claim from the effect of the statute of limitations there must be a clear and definite acknowledgment of the debt, a specification of the amount due or a reference to something from which such amount can be definitely and certainly ascertained, and an unequivocal promise to pay. A mere general statement by the debtor that he will settle, without more, is not an acknowledgment of the debt and a promise to pay sufficient to toll the statute.

Argued March 21, 1910. Appeal, No. 7, Oct. T., 1910,

by Hugh Ferguson, from decree of O. C. Allegheny Co.,
April T., 1909, No. 172, dismissing exceptions to ad-
judication in Estate of Harvey Lyman Shaffer, deceased.
Before FELL, C. J., MESTREZAT, POTTER, ELKIN and
MOSCHZISKER, JJ. Affirmed.

Exceptions to adjudication.

The facts are stated in the opinion of the Supreme
Court.

*Errors assigned* were in dismissing exceptions to ad-
judication.

*C. C. Dickey*, with him *W. K. Shiras*, for appellant.—
We do not overlook the rule of law that claims against
the estates of decedents will be scrutinized by the court
with great care, but we contend that we have established
the claim of appellant by proof which will bear the severest
scrutiny: Harrington v. Hickman, 148 Pa. 401; Wormley's
Est., 137 Pa. 101; Harper's Est., 196 Pa. 137.

The statute of limitations is tolled by the removal by
Shaffer of his residence from the state of Pennsylvania
in the year 1891: Bates v. Cullum, 177 Pa. 633; Noonan
v. Pardee, 200 Pa. 474.

The cause of action was complete when Shaffer took
the lease of the school property in his own name instead
of the name of appellant, and the former was then a
resident of Pennsylvania, and is so described in the lease:
Hunter v. Ry. Co., 33 Tex. 381; Foot v. Edwards, 3
Blatchford, 310; Barden v. Crocker, 27 Mass. 383; Still-
man v. White Rock Mfg. Co., 3 Woodbury & Minot, 538;
Bulwer's Case, 7 Coke, 49; Price v. Price, 156 Pa. 617;
Weld v. Boston, 126 Mass. 166.

*Edwin W. Smith*, of *Reed, Smith, Shaw & Beal*, for ap-
pellee.—If we concede that Shaffer was employed by
Ferguson as his agent, and that the contract of employ-
ment was made in Pennsylvania, the breach of the con-

tract, that is, the act of Shaffer which gave any right of action that Ferguson may have had, was in Tennessee, and the cause of action therefore arose in that state: Noonan v. Pardee, 200 Pa. 474; Miller v. Hallock, 9 Colorado, 551 (13 Pac. Repr. 541); Rodgers v. Mut. Endowment Assn., 17 S. C. 406; Shelby Steel Tube Co. v. Gun Co., 40 N. Y. Supp. 871; Durham v. Spence, L. R. 6 Ex. Cas. 46; Hibernia Nat. Bank v. Lacombe, 84 N. Y. 367.

The conversation between Lare and Shaffer at which Ferguson was not present is, we think, of no value: Gleim v. Rise, 6 Watts, 44; Kensington Bank v. Patton, 14 Pa. 479; Shaeffer v. Hoffman, 113 Pa. 1; Miller v. Baschore, 83 Pa. 356.

OPINION BY MR. JUSTICE MOSCHZISKER, April 18, 1910:

Hugh Ferguson presented a claim against the estate of Harvey Lyman Shaffer, deceased. It was disallowed on two grounds: 1. Insufficiency of proof to sustain the claim. 2. The bar of the statute of limitations. The matter is now before this court on the appeal of the claimant.

In the year 1889 or 1890 Ferguson had been in Tennessee looking up some ore properties. He returned to Pittsburg and made an arrangement with Shaffer to go to Tennessee. The details of this arrangement are not shown, but it appears that Shaffer was to secure a lease of a mineral property known as "Ducktown School Lot." Ferguson was to advance the necessary money, and after such advances were paid back to him, he and Shaffer were each to have a one-half interest in the lease. Shaffer went to Tennessee, and secured the lease in his own name on January 21, 1891. Ferguson was dissatisfied with this, and went south to see Shaffer. They had a meeting in Tennessee on February 20, 1891, and Ferguson then and there accepted a written assignment from Shaffer of a one-half interest in the lease.

A corporation was organized under the laws of Tennes-

see called the Pittsburg & Tennessee Copper Company.
Shaffer and Ferguson were two of the incorporators, and
at the first meeting, held in Pittsburg, June 23, 1891,
a resolution was passed that $50,000 in stock be given
to Ferguson and Shaffer for this leasehold. At this
meeting Ferguson abused Shaffer, and made a demand
on him for the lease. On October 2, 1891, Shaffer as-
signed his one-half interest in the lease to the Hiwasse
Company of Boston, through one Eager, who paid
him $10,000 as a consideration for the assignment. On
February 19, 1892, Ferguson transferred his one-half
interest to the copper company, and received in payment
$25,000 of the capital stock. The company then entered
into negotiations with Shaffer to purchase his interest,
and decided to acquire it for $12,500. On August 25,
1892, however, Ferguson purchased the interest in his
own name for $12,000, and secured an assignment from
the Hiwasse Company. So far as the evidence shows
this transaction took place in either Boston or New York.
On November 2, 1893, Ferguson assigned this interest
to the copper company, and received $25,000 of its stock
in payment. The copper company subsequently be-
came insolvent.

In April or May of 1906 Shaffer came to Pittsburg
and met Ferguson. "Shaffer walked up to him, ex-
tended his hand and said, 'Hugh, oh, let by gone be by
gone.' Ferguson looked up with a very angry expres-
sion coming over his face, and quickly said: 'If that
is the case, you had better pay me what you owe me.'
Shaffer said: 'Hugh, the next time I come to Pitts-
burg we will take up our Tennessee matter, and I will
pay you what you are out.'" The witness Lare who
testified to this occurrence said that Shaffer remarked to
him "that was an awful cold reception the old man gave
me." To which the witness replied: "You deserved it."
And Shaffer said: "I intend to take that matter up with
him [Ferguson] and settle it with him."

The court below finds that: "Shaffer was a native of

Pittsburg and a citizen of this state until 1890 or 1891, when he became a citizen of Georgia, and later a resident of New York; he frequently was in Pittsburg; but there is no evidence that he was a citizen of Pennsylvania after that time."

Ferguson claimed $12,500, the amount paid by him to acquire the interest in the lease that Shaffer had assigned to the Hiwasse Company, with an alternative claim of $10,000, the amount which Shaffer received from Eager when he sold the interest to the Hiwasse Company; on the theory that Shaffer had been guilty of a breach of contract when he took the whole lease in his own name, or of a breach of trust when he sold the one-half interest to the Hiwasse Company. We are of opinion that the claims were obviously stale and barred by the statute of limitations.

But the appellant contends that they were saved from the bar of the statute by the Act of May 22, 1895, P. L. 112, to the effect "that in all civil suits and actions in which the cause of action shall arise in this state, the defendant or defendants in such suit or action, who shall have become nonresidents of the state after said cause of action shall have arisen, shall not have the benefit of the statute of this state." If Shaffer was guilty of bad faith toward Ferguson, the breach which gave rise to the right of action, whether it was in wrongfully taking the lease in his own name in January, 1891, or in the sale of his interest to an outsider in October, 1891, occurred outside of the state of Pennsylvania. "A cause of action is that which produces or affects the results complained of:" Noonan v. Pardee, 200 Pa. 474. The phrase "cause of action" as used in the statutes fixing the jurisdiction of the courts according to where the cause of action arises, means that which creates the necessity for bringing the action. It arises when that is not done which should have been done, or that is done, which should not be done: Durham v. Spence, L. R. 6 Ex. Cas. 46; Hibernia Nat. Bank v. Lacombe, 84 N. Y. 367. The

cause of action having arisen outside of the state, the present case does not fall within the act of 1895.

On the question of the acknowledgment of the debt, the trial judge states: "It does not appear that this claim was the subject of the conversation between Shaffer, Lare and Ferguson in 1905, or 1906; a settlement was mentioned; but of what? A promise to pay Ferguson what he was out, or to settle with him, is far from a promise to pay Ferguson $12,500 with interest for eighteen years. The long lapse of time would seem to exclude the claim as presented as the subject of this conversation. . . . Ferguson had abundant opportunity to enforce his demand against Shaffer; the latter had become a man of wealth; he was frequently in Pittsburg, and was easily found in New York. . . . Finally, this claim is within the class subject to the closest scrutiny because of its age and the attendant circumstances. It is especially in that class of claims which requires the claimant to proceed with diligence against his alleged debtor living, and not to wait until his opponent's lips are sealed." This is a correct view of the case. The words used by Mr. Justice GORDON in Miller v. Baschore, 83 Pa. 356, are applicable here: "The evidence was not sufficient to relieve the claim from the effect of the statute of limitations. In order to effect such a result there must be a clear and definite acknowledgment of the debt, a specification of the amount due or a reference to something from which such amount can be definitely and certainly ascertained, and an unequivocal promise to pay. In the case under consideration the acknowledgment and undertaking of the defendant lack these essential characteristics." In Gleim v. Rise, 6 Watts, 44, the plaintiff sent a messenger to the defendant to inquire about the collection of the debt. The defendant said that the plaintiff need not trouble himself, "that he would be down and settle with him." We held: "There was nothing improbable in supposing that a man who says he will come down and settle, believes that there is nothing due by him, and had

no idea that he was admitting himself to be in debt. The acknowledgment must go to the fact that the debt is still due." In Kensington Bank v. Patton, 14 Pa. 479, we said: "The promise to pay must not be vague, shadowy and uncertain; it must be plain, unambiguous and express, and such as to preclude hesitation and doubt;" and in Schaeffer v. Hoffman, 113 Pa. 1: "The decisions of this court apply very strict rules to acknowledgments to take a case out of the statute of limitations. We mean to adhere to them in letter and spirit." The acknowledgment depended upon was not sufficient under the authorities to toll the statute.

The assignments of error are overruled, and the decree is affirmed at the cost of the appellant.