## Hunter v. Bremer, Appellant.

*Statutes—Construction—"Residence"—Limitation of actions—Act of May 22, 1895, P. L. 112.*

1. In ascertaining the meaning of the word "residence" in a particular statute the legislative purpose, as well as the context, should be kept in view.

2. The Act of May 22, 1895, P. L. 112, which provides that "de-

fendants.......who shall have become nonresident of the state after said cause of action shall have arisen shall not have the benefit of any statute of this state for the limitation of actions during the period of such residence without the state," contemplates simply a residence of such permanency that the person in question may be found here and served with ordinary legal process, generally speaking, at any time.

Raymond v. Leishman, 243 Pa. 64, compared and followed.

*Evidence—Offer relevant in part only.*

3. When evidence offered is relevant in part only the court is not bound to separate the good from the bad, but may reject it as a whole.

*Practice, Supreme Court—After-discovered evidence—Refusal of new trial—Discretion—Charge—Failure to request—Exceptions.*

4. Whether or not a new trial shall be granted to let in after-discovered evidence is a matter for the trial court, and the refusal of a new trial in such case will never be reversed in the absence of a clear abuse of discretion.

5. Where a party makes no special request for charge and does not except specially to the instructions, the appellate court will not reverse for mere inadequacy in the charge.

Argued Oct. 20, 1916. Appeal, No. 166, Oct. T., 1916, by defendant, from judgment of C. P. Allegheny Co., Oct. T., 1914, No. 425, on verdict for plaintiff in case of David Hunter, Jr., Receiver of Land Trust Company, v. J. D. Bremer. Before Brown, C. J., Potter, Moschzisker, Frazer and Walling, JJ. Affirmed.

Assumpsit upon two promissory notes. Before Swearingen, J.

The facts appear by the opinion of the Supreme Court.

The jury found a verdict for the plaintiff for $7,495.47, upon which judgment was subsequently entered. Defendant appealed.

*Errors assigned,* among others, were the charge of the court, and in refusing a motion for a new trial based upon after-discovered evidence.

*W. K. Jennings,* with him *D. C. Jennings,* for appellant.

*Alexander J. Barron,* with him *McKee, Mitchell & Alter,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, January 8, 1917:

This action was instituted by David Hunter, Jr., as receiver of the Land Trust Company, against J. D. Bremer, to recover the balance due upon two promissory notes signed by the latter and held by the former. The first of these, dated December 22, 1905, payable upon demand, was called about three months thereafter, and the second, dated June 25, 1907, fell due on October 25, 1907. The present suit was not commenced until July 22, 1914, when both obligations were more than six years overdue.

The defendant interposed the bar of the statute of limitations; to which the other side replied that, on the facts in this case, the Act of May 22, 1895, P. L. 112, forbade him the benefits of this defense. The act in question provides: "In all civil suits.......in which the cause of action shall have arisen within this state the defendant or defendants......, who shall have become nonresident of the state after said cause of action shall have arisen, shall not have the benefit of any statute of this state for the limitations of actions during the period of such residence without the state."

The issues involved, as to the residence of the defendant at the time the cause of action arose and his subsequent nonresidence, were submitted to the jury and found in favor of the plaintiff; a verdict was rendered accordingly, upon which judgment was entered, and the defendant has appealed.

The defendant claimed that he was not a resident of this State when the notes in suit were executed or at the time default was made thereon; that his permanent resi-

dence was then in New York, and he simply came here on business; that he did not establish a residence in Pennsylvania until 1910; and he gave his·own testimony to substantiate these contentions. On the other hand, the plaintiff said that Mr. Bremer was a resident of Pittsburgh, Pennsylvania, when the cause of action arose and for some time thereafter; but that, subsequently, he became a nonresident, and lived without the State for such a period as prevented the bar of the statute of limitations.

When upon the stand, the defendant admitted that, from 1902 to 1906, he was secretary of a fire insurance company, with headquarters in Pittsburgh, and that he had a half interest in another like business in the same place; that afterwards he was special agent for a third insurance concern, which also necessitated his presence in that city; and that, when in Pittsburgh, he had his living quarters at a hotel or in a boarding house, where he "rented a room" and kept sufficient personal articles to meet his requirements. On cross-examination, his attention was called to certain testimony given by him, July, 1914, in an extradition proceeding in the Quarter Sessions Court of Allegheny County, which involved the question of his residence, wherein he made a declaration susceptible of the construction that he had been a resident of Pennsylvania for about 22 years; this in contradiction of his allegation at bar that in 1905 and 1907, when the notes in suit grew due, he was a nonresident of Pennsylvania. Again, the defendant was confronted with certain testimony given by him in a legal proceeding, in 1913, when he said that he was then resident in the State of New York; this in contradiction of his allegation at bar that he had been a resident of Clarion County, Pennsylvania, since 1910. In addition, the plaintiff offered as a witness one who was an assistant district attorney of Allegheny County at the time of the extradition against the defendant; he testified that those proceedings involved the question as to whether Mr.

Bremer was a resident of Pittsburgh or of Texas, and that the latter then said he had been a resident of Pittsburgh and its vicinity for 22 years. The plaintiff also produced other witnesses to substantiate his contentions as to the residence of the appellant.

The testimony in the case, both pro and con, was fairly reviewed by the trial judge, who, in submitting it to the jury, said: "You observe the language of this statute . . . . . . [Act of 1895, supra] . . . . . . It does not use the word 'citizen,' or even the word 'domicile,' but. . . . . . 'resident.' If the statute had said that a man's domicile must have been changed, or his place of citizenship changed, the meaning would be different from what it is, because there is a distinction between residence and domicile. A man's domicile is where he has his residence, with an intention of remaining there. Residence does not necessarily involve the idea of an intention of remaining there at that place where his residence is. Residence means where a man abides, not merely temporarily like a traveling man coming into Pittsburgh and staying a day, a week, or even a month, or something of that kind, but it is where he resides. He may not have a domicile where he resides, where he would have the right to vote, for example; but as I say to you, it means more than a mere boarder, roomer or something like that. You have the testimony as to what took place with reference to the defendant being in Pittsburgh at the time these notes were made. He was here, he had a place where he went from day to day, either at a hotel or boarding house . . . . . , and he was the secretary of this insurance company, and he did business in Pittsburgh. He was part owner of an insurance agency here in this city. If you . . . . . . are satisfied by the weight of the evidence that the defendant was, at the time of the making of these obligations, a resident of the City of Pittsburgh . . . . . . then the plaintiff will have established the first thing it must, in order to avail itself of the provisions of this statute. If, however, you find he was not, if you find he was at

that time a resident of the State of New York, and that is what he said he was, and only here in a temporary manner, then the plaintiff will have failed to make out the first thing which it must do, in order to avail itself of the benefit of this statute. Then the second thing is that the defendant became a nonresident of Pennsylvania, after the making of these notes. So if you find ......that the defendant, after the making of these notes, became a resident of the State of New York, as is claimed by the plaintiff, then it will have made out the second element which it must do, in order to take advantage of this statute. If he did not become a resident of the State of New York, then the plaintiff will have failed."

The instructions just quoted are complained of in the defendant's second assignment of error; but we see only one statement therein which is open to criticism; that is where the trial judge said, "Residence does not necessarily involve the idea of an intention of remaining there at that place where his residence is." If the word "permanently" had been used immediately before "remaining," the instructions would have been strictly correct. When, however, we take the particular instruction under discussion with its context, it is perfectly clear the trial judge meant that, to constitute residence, an intention permanently to remain at the place in question was not necessarily involved; and the jury must have so understood. With this matter cleared up, as just explained, the instructions are beyond criticism.

Of course, there are many cases dealing with residence and domicile; but in view of the recent consideration given the subject by this court in Raymond v. Leishman, 243 Pa. 64, 68, 70, 71, a citation of that authority is enough. There we passed upon the Foreign Attachment Act of June 13, 1836, P. L. 568, as amended by the Act of March 30, 1905, P. L. 76, which provides that such a writ may be issued against the real or personal estate of any person "not residing within this Commonwealth";

and decided that an American ambassador living abroad, in the performance of his duties, was, within the meaning of the law, a nonresident of Pennsylvania. In the course of that opinion we said, "Residence is often used to express different meanings, according to the subject-matter......It may mean the domicile of the person or his temporary presence in the locality. Domicile has been well defined to be the place where a man has his true, fixed and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning; it is acquired by a residence with an intention of remaining in the locality. The person may have his domicile in one state and be engaged in business in another, and thereby acquire a temporary residence in the latter......His place of residence may, and most generally is, his place of domicile, but it obviously is not by any means necessarily so, for no length of residence without the intention of remaining will constitute domicile......It is clear that 'residence' and 'domicile' are not convertible terms, and that the latter has the more extensive signification......In ascertaining the meaning of the word 'residence' in a particular statute, the legislative purpose as well as the context must be kept in view."

In the Leishman case (supra), we hold that, considering the evident purpose of the legislation then before us, when a person was absent from this State, whether or not he had acquired a domicile in another place, if his absence was so protracted that he could not be reached by the ordinary process of our courts, he was not residing in this Commonwealth within the meaning of the statute; in other words, that actual residence in Pennsylvania so that one might be served with process, at any time, generally speaking, was the kind contemplated, and a contrary condition of affairs constituted nonresidence. Moreover, we there suggest that (p. 71), "in determining whether a debtor is within the provisions of the statute, the......courts must necessarily be guided

by the ordinary and obvious indicia of residence or the absence of such indications"; and we take occasion to quote from a case which states that "the purposes of the act are not to be thwarted by the secret mental resolves or intentions of the debtor on the subject of his domicile." For a full discussion of the subject, see Raymond v. Leishman, supra.

In considering the present statute (Act of 1895, supra), in Bates v. Collum, 177 Pa. 633, 637, we said, "It applies to all civil suits......in which the cause of action shall have arisen within this State (Shaffer's Est., 228 Pa. 36, 40), and it affects all defendants who shall have become nonresidents after said cause of action shall have arisen"; meaning, necessarily, defendants who had a residence at the time the cause of action arose, else they could not "become" nonresidents. It is plain that the residence intended by this act is of the same character as that contemplated by the statute dealt with in the Leishman case; in other words, the legislative purpose was to provide that, when a resident of Pennsylvania incurs legal obligations within the Commonwealth, if he subsequently leaves this jurisdiction and becomes nonresident to such an extent that he cannot be reached by the ordinary process of a Pennsylvania court, while so nonresident, he is not entitled to the benefit of our statutes of limitation. In short, the Act of 1895, supra, contemplates simply a residence of such permanency that the person in question may be found here and served with ordinary legal process, at any time, generally speaking. The existence of such a residence constitutes one a resident within the meaning of the act, and, on the other hand, its absence makes him a nonresident. For an interesting discussion of a similar statute, upon which a like construction was placed, see Johnson v. Smith, 43 Mo. 499, 501.

Whether or not the present defendant, at the time the cause of action arose, had a residence in Pennsylvania of the character indicated, and, if so, whether or not he

subsequently abandoned it, and, further, if he did abandon it, for how long, under the evidence in this case, were all issues for the jury. It may be that the learned trial judge might have phrased the language of his charge a little more aptly in submitting certain phases of these issues, but he made no positive misstatements of law, nor did he say anything which probably misled the jury to the defendant's prejudice; moreover, the latter tendered no special requests for charge, nor did he except specially to the instructions of which he now complains. Under these circumstances, while, on the general exception thereto, the charge has been reviewed as a whole, yet, since the assignment under consideration presents no fault which amounts to more than a mere inadequacy, we will not reverse thereon: Mastel v. Walker, 246 Pa. 65, 71; Watson v. Monongahela River Consolidated Coal & Coke Co., 247 Pa. 469, 477; Devall v. Glover, 250 Pa. 417, 421.

The third, fourth and fifth specifications of error complain of the refusal to grant a new trial, so as to let in certain alleged after-discovered evidence. In disposing of these assignments, the court below very properly said: "The defendant has taken the depositions of several witnesses upon the subject of his residence in Pennsylvania, which he contends is after-discovered evidence......We have considered this testimony......; the most important part of it relates to what the defendant himself stated to the witnesses. True, many of the statements were made under circumstances when it was not likely he had any purpose of preparing for the contingency which arose at this trial. Still they were but his declarations and, being in his own favor, they could not be of as high evidential value as his testimony given to the jury. In other words, admitting that the testimony contained in these depositions is after-discovered evidence, yet it is but cumulative, and so we cannot say the verdict would probably have been different had the same been submitted. But there is another consideration. It will

be observed that this 'after-discovered' testimony relates rather to the domicile than to the residence of the defendant; they are not by any means synonymous terms. A man may have more than one residence, but the best opinion is that he can have only one domicile at the same time. He may seek a place for purposes of pleasure or business and so may acquire a residence distinct from his domicile. To establish domicile there must be two things, an actual residence of some sort and an intent to remain. The essential distinction between residence and domicile therefore is that the first may involve the intent to leave when the purpose for which one has taken up his abode ceases, while the second involves no such intent; the abiding is animo manendi......: Taney's App., 97 Pa. 74, 78. The word used in the statute under consideration is 'nonresident'; the word 'domicile' is not used at all. Presumably the legislature used the word in its legal meaning. It is plain to us that the statute relates to the residence of parties and not to their domicile. Therefore the defendant may have established a residence for business purposes in the City of Pittsburgh, so as to bring himself within the terms of the above quoted statute. Undoubtedly the question of his residence in Pittsburgh was one of fact to be determined by the jury under the evidence. We are of opinion that the Court would not be justified in holding that the testimony proposed to be introduced would probably change the result if a new trial were granted." Whether or not a new trial shall be granted to let in after-discovered evidence is a matter for the trial court, and, in such cases, we will never reverse unless convinced of clear abuse of discretion; we discover none here.

The first assignment of error complains that the trial judge erred in sustaining an objection to a question asked the defendant by his counsel on direct examination, and in striking out the answer thereto, as follows: "Did you ever leave New York City with the intention of seeking another place of abode or residence,

or becoming an inhabitant of some other place, or citizen of some other place, until the date you have just fixed?" A.—"No, sir." The date referred to was December, 1910, when the defendant asserted he established his residence in Clarion County, Pennsylvania. When the evidence is examined, it appears that the defendant, after testifying he took up his abode in New York in 1900, was asked whether from that year to 1914 he had made "any change of residence." Although objected to, he was permitted to answer this question, and replied, "I moved to Clarion County in 1910"; which,.considering the phrasing of the interrogatory, was equivalent to saying that he had never left New York for the purpose of changing his residence before the date last mentioned. In addition, as previously noted, he gave other testimony to the same effect; hence, apart from the question of the relevancy of the testimony stricken out, it is quite evident that, at the most, it was but cumulative, and its exclusion, in all probability, did the defendant no harm. So far as intention properly entered into the inquiry, however, it was not the intention of the defendant when he left New York, but that entertained by him when he came to Pennsylvania, and lived and carried on business in Pittsburgh, with which the court below was concerned. Then again the interrogatory, as put, embraced three points, namely, whether or not the defendant, prior to the date mentioned, ever left New York with the intention (1) of seeking another residence, (2) of becoming an inhabitant of another place, and (3) of becoming a citizen of another state. The last of these had no real relevancy to the issue of his alleged residence in Pittsburgh, i. e., the residence contemplated by the Act of 1895, supra. When evidence offered is relevant in part only, the court is not bound to separate the good from the bad, but may reject it as a whole: Smith v. Arsenal Bank, 104 Pa. 518, 521; Evans v. Evans, 155 Pa. 572, 577; Mease v. United Traction Co., 208 Pa. 434, 436. We see no reversible

error in the ruling called to our attention by the assignment in hand.

. The sixth and last assignment complains of the judgment entered on the verdict; this and the others previously considered are all overruled.

The judgment is affirmed.