MACK TRUCKS, INC., Appellant,

v.

BENDIX–WESTINGHOUSE AUTOMO-TIVE AIR BRAKE COMPANY,

v.

LATROBE DIE CASTING COMPANY,
Third-Party Defendant.

No. 15539.

United States Court of Appeals
Third Circuit.

Argued April 14, 1966.

Decided Dec. 15, 1966.

Rehearing Denied Jan. 18, 1967.

Joseph B. Bagley, Pittsburgh, Pa. (Robert N. Peirce, Jr., Hess, Hess & Bagley, Pittsburgh, Pa., on the brief), for appellant.

Joseph F. Weis, Jr., Pittsburgh, Pa. (Weis & Weis, Pittsburgh, Pa., on the brief), for appellee Bendix-Westinghouse Automotive Air Brake Co.

Arthur R. Gorr, Pittsburgh, Pa. (Arthur G. Stein, Stein & Winters, Pittsburgh, Pa., on the brief), for appellee Latrobe Die Casting Co.

Before McLAUGHLIN, HASTIE and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

This is an action for indemnity. It is of federal cognizance solely under diversity jurisdiction. The District Court for the Western District of Pennsylvania dismissed the action as barred by the statute of limitations. This appeal followed.

The claim for indemnity arose in this way. Bendix-Westinghouse Automotive Air Brake Co. sold brake pedal assemblies, manufactured for it by Latrobe Die Casting Co., to Mack Trucks, Inc., for incorporation in vehicles manufactured by Mack. A truck, incorporating such a brake assembly, was sold to a resident of Florida. While the vehicle was being operated in Florida, the brake assembly broke, causing an accident. A person injured in the accident sued Mack and the operator of the truck in a Florida court and recovered a judgment for $13,028.95, which Mack paid. A formal "Satisfaction of Judgment", duly executed by counsel, was filed and entered in the records of the Florida court on June 30, 1960.

Mack gave Bendix timely notice of the Florida suit, although Florida procedural rules prevented the joining of Bendix as an additional defendant. However, it was not until October 10, 1963, more than three years after the satisfaction of the Florida judgment, that Mack brought this suit for indemnity against Bendix in the Western District of Pennsylvania. Bendix joined Latrobe as a third-party defendant.

One defense was the statute of limitations. Since this was a diversity case, the district court, no different from a Pennsylvania state court, was obligated to apply Pennsylvania choice of law rules to determine what statute of limitations was applicable. Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079. In most situations, Pennsylvania courts apply the statute of limitations of the forum. Freeman v. Lawton, 1946, 353 Pa. 613, 46 A.2d 205; Rosenzweig v. Heller, 1931, 302 Pa. 279, 153 A. 346. However, there is a statutory exception to this rule. Pennsylvania courts must respect and apply the following Pennsylvania "borrowing" statute:

> "When a cause of action has been fully barred by the laws of the state or country in which it arose, such bar shall be a complete defense to an action thereon brought in any of the courts of this commonwealth." 12 P.S. § 39.

Thus, if this "cause of action * * * arose" in Florida, reference must be made to the appropriate Florida statute of limitations. Mangene v. Diamond, 3d Cir. 1956, 229 F.2d 554. The district court concluded that the cause of action arose in Florida. We agree.

The concept of "the arising of a cause of action" is used frequently to systematize and facilitate the application of statutes of limitations. Usually, the problem is to determine when the statute begins to run. In this context, the familiar rule is that the statute begins to run when the cause of action arises, as determined by the occurrence of the

final significant event necessary to make the claim suable. Foley v. Pittsburgh-Des Moines Co., 1949, 363 Pa. 1, 68 A.2d 517; Bell v. Brady, 1943, 346 Pa. 666, 31 A.2d 547; Shaffer's Estate, 1910, 228 Pa. 36, 76 A. 716. With reference to claims for indemnification for loss, this means that the cause arises when the plaintiff sustains the loss for which he can claim indemnification. Chicago, R. I. and Pacfic Ry. v. United States, 7th Cir. 1955, 220 F.2d 939; Northwest Airlines, Inc. v. Glenn L. Martin Co., D.Md. 1958, 161 F.Supp. 452; Hidick v. Orion Shipping & Trading Co., S.D.N.Y.1957, 157 F.Supp. 477; Globe Indemnity Co. v. Larkin, 1944, 62 Cal.App.2d 891, 145 P.2d 633. In the present case, the cause of action for indemnity arose when Mack satisfied the judgment, an event evidenced by formal entry of record in the Florida court on June 30, 1960.

The Pennsylvania borrowing statute utilizes this concept of the arising of a cause of action in relation to place rather than time in order to specify the circumstances in which a Pennsylvania court shall apply another state's statute of limitations and to identify the appropriate state. We think the concept of when a cause arises and the concept of where a cause arises, both used to aid in the application of statutes of limitations, are *in pari materia*. In other words, the cause arises where as well as when the final significant event that is essential to a suable claim occurs. Bank of Nova Scotia v. San Miguel, 1st Cir. 1952, 196 F.2d 950; Orschel v. Rothschild, 1925, 238 Ill.App. 353; Runkle v. Pullin, 1912, 49 Ind.App. 619, 97 N.E. 956. In this case the cause of action arose when a judgment was entered against and later satisfied by Mack in Florida. By the same token, Florida is the state where the cause of action for indemnity arose.

In an effort to avoid this conclusion, the appellant cites Griffith v. United Air Lines, 1964, 416 Pa. 1, 203 A.2d 796. There it was held that the measure of damages in a tort case should be determined in accordance with the law of the

place having the most significant contacts with the relevant transactions and with the parties rather than by the law of the place of the wrong. In so holding, the court announced a common law conflict of laws rule for the choice of law to be applied in deciding the merits of certain issues. No statute was controlling, and there was no question of when or where the cause of action arose, though apparently it arose at the place of wrong.

Here we have a very different situation. Under the Pennsylvania borrowing statute a court is required to apply the statute of limitations of the state where the cause of action arose without regard to any contacts of any other state with the parties and their prior dealings. And certainly neither the *Griffith* case nor any other of which we know suggests that the residence of the parties or the place of their earlier dealings before the claim became suable have any relevance to determining when or where the cause arose. Indeed, in Foley v. Pittsburgh-Des Moines Co., supra, Chief Justice Stern explicitly stated that the accrual of a cause of action occurs when suable harm is done the plaintiff, "not when the causes are set in motion which ultimately produce injury as a consequence". 363 Pa. at 38, 68 A.2d at 535.

Perhaps it would be arguable, on the merits of the present controversy, that in determining the existence or extent of an obligation to indemnify, the forum should be guided, as was the court in the *Griffith* case, by the substantive law of Pennsylvania because of cumulatively significant Pennsylvania "contacts". But we do not have that problem here. We have to answer only the narrow question of the meaning of the phrase "where the cause of action arose", as used in the Pennsylvania borrowing statute and applied to a situation in which the cause of action came into existence upon the happening of certain events in Florida.

█ █ It remains to determine what period of limitations Florida law speci-

fies for such an action as this. Section 95.11(5) (e) of Florida Statutes Annotated stipulates that "an action upon a contract, obligation or liability not founded upon an instrument of writing" must be brought within three years after the action shall have accrued. While the relationship between Mack and Bendix-Westinghouse in this case resulted from a transaction of sale evidenced by a writing, no express promise to indemnify appears or is claimed. Rather, the plaintiff is suing on an imposed obligation which the seller must bear, even in the absence of such a promise. Thus, this is "an action upon a * * * liability not founded upon an instrument of writing. * * * " Cf. Webb v. Powell, 5th Cir. 1937, 87 F.2d 983; Edgerly v. Schuyler, Fla.App.1959, 113 So.2d 737; Ball v. Roney, 1933, 112 Fla. 186, 150 So. 240. As one Florida court has expressed the controlling concept, an action or a liability is "founded upon a written instrument" for purposes of statute of limitations only if that instrument contains an undertaking "to do the thing for the nonperformance of which the action is brought". Gulf Life Ins. Co. v. Hillsborough County, 1937, 129 Fla. 98, 104, 176 So. 72, 75.

█ We conclude, as did the trial court, that the three year Florida statute of limitations is applicable to the claim in suit. There is no contention or evidence that the statute was tolled for any period. Accordingly, since this cause accrued not later than June 30, 1960, the date upon which Mack's satisfaction of the Florida judgment was entered in the records of the Florida court, the present action was barred at the time of its filing on October 10, 1963.

The judgment will be affirmed.

FREEDMAN, Circuit Judge (dissenting).

The determination under the Pennsylvania Borrowing Statute (Act of June 26, 1895, P.L. 375, § 1 [1]) of where the present "cause of action" for indemnity

I. 12 Purdon's Pa.Stat.Annot. § 39.

"arose" involves two difficulties. There is first the generally elusive concept of a "cause of action". To this is added the nature of the present action for indemnity, originating in an implied warranty and founded on a quasi contractual right of restitution which matured after a recovery in tort.[2]

The majority has wisely rejected a decision based on the predominance of the tort or contract elements which would lead to Florida as the *lex loci delictus* if the tort element prevailed and to Pennsylvania as the *lex loci contractus* if the contract element governed. I disagree, however, with the majority's conclusion that the place where the cause of action arose should be fixed where the event occurs which starts the running of the time for the statute of limitations.[3] This, it seems to me, has the attraction of simplicity but is just as inappropriate a test as are the labels of contract or tort in executing the policy of the Pennsylvania Borrowing Statute. It is not required by any Pennsylvania precedents old or new and is inconsistent with the modern trend of Pennsylvania law.

It is true that Mack's right to indemnity was against loss and not against liability and therefore arose only on Mack's payment to the injured party in satisfaction of the judgment. The use of this event as the time when the cause of action for indemnity arises is appropriate as the point of origin of the indemnitee's claim against the indemnitor. Even this rule, however, is often expressed without distinction between the time of payment and the time of satisfac-

tion of the judgment.[4] But at least for ordinary purposes, where the short interval between the payment and satisfaction of the judgment has no significance for the period of limitations involved, the rule is simple, easily applicable, and meets no countervailing elements.

A holding, however, that the place where a cause of action arose is to be conclusively equated with the location of the vagrant event which sets the time running, leads to serious problems. The place of the apparently simple element of payment is subject to fortuitous variations and may even be contrived. A corporation with a nationwide business may make or receive payment in any one of the states. If the place of payment is to be decisive, such a party can determine what statute of limitations shall bind it by a conscious choice of the office from which payment will be made, or conversely of the office to which payment ultimately will be made. When the payment is made in satisfaction of a judgment it may seem that the place of judgment should be the determinative factor. But there are many cases where indemnity arises on a payment which is made in settlement of a claim without the entry of a judgment. Even after a judgment, the possibility of appeal or the difficulty in obtaining satisfaction by execution may lead to a negotiated settlement effected in a place outside the state where the judgment was entered. It would be contrary to the law's deep-seated preference for settlement rather than litigation to make it an advantage for a party to have his liability deter-

2. See Builders Supply Co. v. McCabe, 366 Pa. 322, 77 A.2d 368, 24 A.L.R.2d 319 (1951). See also Crawford v. Pope & Talbot, Inc., 206 F.2d 784, 792–793 (3 Cir. 1953).

3. My view makes it unnecessary to reach the question whether if the cause of action is held to have arisen in Florida, the Pennsylvania Borrowing Statute must be held to look not merely to the period of limitations of Florida, but also to Florida's tolling provision. The Pennsylvania Borrowing Statute provides that the bar is a defense in Pennsylvania "when a cause of action has been fully

barred by the laws of the state * * * in which it arose." See Mangene v. Diamond, 132 F.Supp. 27 (E.D.Pa.1955), aff'd 229 F.2d 554 (3 Cir.1956); Hornsey v. Jacono, 12 Pa.Dist. & Co.R.2d 291 (C.P.Del.Co.Pa.1957). The Florida statute (Fla.Stat.Annot., § 95.07) provides in relevant part: "If, when the cause of action shall accrue against a person, he is out of the state, the action may be commenced within the term herein related after his return to the state * * *"

4. E.g., Northwest Airlines, Inc. v. Glenn L. Martin Co., 161 F.Supp. 452, 458 (D. Md.1958).

mined by a judgment rather than by a settlement.

In the present case the cause of action is said to have arisen in Florida because it is there that Mack satisfied the judgment and thus started the time to run which marked when the cause of action arose. But suppose the judgment had not been satisfied, but a simple payment or even a settlement under the judgment had been made in Pennsylvania? Or suppose that a judgment had later been entered in Pennsylvania in a suit on the Florida judgment and the Pennsylvania judgment alone had been marked satisfied of record after a payment made in Pennsylvania? Would any of these circumstances alter the determination of where the cause of action arose?

It seems to me that the place where payment is made in settlement of a claim or in satisfaction of a recorded judgment does not contain the same undeviating element as does the time of payment, which is the inherent point of origin of the cause of action for indemnity. I therefore believe that the Pennsylvania courts would interpret the Borrowing Statute by the application of general choice of law principles rather than promulgate a general rule whose effect in many cases would be to vest one party with the power to choose the controlling statute of limitations by manipulation of the place of payment.

Pennsylvania is in the forefront of jurisdictions which have recently adopted a pragmatic standard of choice of law which eschews mechanical formulas. This standard reduces the possibility of manipulation to insignificance. It stresses the interests of the jurisdictions involved and emphasizes a principle of realism in preference to an automatic test applied by a rule of thumb. The Supreme Court of Pennsylvania adopted this modern standard in Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (1964). There the court refused to apply the Colorado limitation on damages against the estate of a Pennsylvania decedent even though he was killed in Colorado in the crash of an airplane. The court applied the law of Pennsylvania because the decedent and the transaction itself, in which decedent had purchased his ticket from defendant in Philadelphia for a flight from that city to Arizona, had such contacts with Pennsylvania that Pennsylvania's interest in the outcome was more significant than that of Colorado. This interest principle, which has moved rapidly into the foreground of acceptance in American states,[5] has been applied by the Supreme Court of Pennsylvania in an increasing number of recent cases and is now firmly established in Pennsylvania decisional law.[6] A similar statutory rule for contract actions now prevails in Pennsylvania under the Uniform Commercial Code.[7] I think Pennsylvania would take a similar approach in construing the Borrowing Statute.

Pennsylvania's interest in the period of limitations to be applied in this action far outweighs the interest of Florida.[8] Florida's real interest was in the negligence action for the accident which occurred in Florida. That action, in which Florida's

5. E.g., Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L. R.2d 1 (1963); Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99, 50 A.L.R.2d 246 (1954); see Bernkrant v. Fowler, 55 Cal. 2d 588, 12 Cal.Rptr. 266, 360 P.2d 906 (1961); Schmidt v. Driscoll Hotel, Inc., 249 Minn. 376, 82 N.W.2d 365 (1957). Many leading articles are cited in Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (1964).

6. See McSwain v. McSwain, 420 Pa. 86, 215 A.2d 677 (1966); Elston v. Industrial Lift Truck Co., 420 Pa. 97, 216 A.2d 318

(1966); Hunter Adoption Case, 421 Pa. 287, 218 A.2d 764 (1966); Kuchinic v. McCrory, 422 Pa. 620, 222 A.2d 897 (1966).

7. Act of April 6, 1953, P.L. 3, § 1–105, as amended, 12A Purdon's Pa.Stat.Annot. § 1–105.

8. There may, of course, be cases where two or more states have significant interests in having their period of limitations applied. Cf. George v. Douglas Aircraft Co., Inc., 332 F.2d 73, 79 n. 6 (2 Cir. 1964).

interest dominated, terminated in a judgment, which was satisfied by payment. The present action for indemnity, on the other hand, is dominated by Pennsylvania's interest. Mack's right of indemnity is based upon a business transaction whose essential contacts all were in Pennsylvania. The brake pedal assembly was manufactured, purchased, delivered and installed in the truck in Pennsylvania where Mack was engaged in business. Pennsylvania therefore has a substantial interest in determining for itself when such a party's cause of action for indemnity should be barred. Otherwise the question would be left to the accident of the particular location where the events which effectuate the right to indemnity may have chanced to occur, and which the original parties would have had no means of foreseeing when they transacted their business. The rapid movement of motor vehicles across state lines should not result in a wayward choice of the place where a cause of action for indemnity arises, even though it is appropriate and just that a party injured by the negligence of the driver should be able to obtain redress for his injuries at the place where the accident occurred, if necessary by the use of a longarm statute.

Nor do I see any reason to restrict the modern Pennsylvania conflicts rule to so-called substantive law questions such as the existence or extent of the obligation to indemnify as distinguished from the present problem of the statute of limitations. Indeed, while limitations of action may fall under the heading of procedure, to the litigant a determination that his suit is completely barred by the statute of limitations is substantively far more drastic and important than a ruling

on the extent of his right to indemnity. But I believe there is a deeper problem involved. Statutes of limitation seem simple on their face because the time period they fix can be measured by the clock. Experience has shown, however, that even here unexpected problems arise which present significant alternatives that can only be determined by a choice of policy. In some cases this policy has been settled by statute and where the courts have followed the letter of the statute they have made an unspoken choice not to alleviate its hardship. In Pennsylvania an early Colonial statute [9] provided for the tolling of the period of limitations in favor of persons under the disabilities of minority, coverture, mental incompetency, imprisonment, or absence beyond the sea. Much of this statute was later held to have been impliedly repealed by a subsequent statute.[10] Among the statutory tolling provisions still in effect is one which exists where a defendant makes service of process impossible by becoming a nonresident after the cause of action arose.[11]

In those cases where the legislature has not provided relief the courts have had the choice of watching the clock or inquiring into the purpose of the statute. In recognizing the underlying purpose of the statute courts have early held that it would not be applied to bar a suit if the plaintiff was diverted from bringing it by the affirmative fraud of his adversary.[12] In Ayers v. Morgan, 397 Pa. 282, 154 A.2d 788 (1959), the Supreme Court of Pennsylvania held that the statute of limitations was suspended in malpractice cases where the injury was unknown and undiscoverable by the plaintiff. In doing so it departed from the traditional rule, which the New York Court of Appeals followed a few years

9. Act of March 27, 1713, 1 Smith's Laws 76, § 5, 12 Purdon's Pa.Stat.Annot. § 35.

10. Act of June 24, 1895, P.L. 236, § 2, 12 Purdon's Pa.Stat.Annot. § 34. Walker v. Mummert, 394 Pa. 146, 146 A.2d 289 (1958); Peterson v. Delaware River Ferry Co., 190 Pa. 364, 42 A. 955 (1899). See also Conard v. Stitzel, 225 F.Supp. 244, 247 (E.D.Pa.1963).

11. Act of May 22, 1895, P.L. 112, § 1, 12 Purdon's Pa.Stat.Annot. § 40; Hunter v. Bremer, 256 Pa. 257, 100 A. 809 (1917).

12. Smith v. Blachley, 198 Pa. 173, 47 A. 985, 53 L.R.A. 849 (1901). Cf. Bailey v. Glover, 88 U.S. (21 Wall.) 342, 22 L. Ed. 636 (1874).

later,[13] that the principle of repose requires the barring of suit in such cases in the absence of specific legislative relief. Similar problems arise where the cause of action results from the accumulation of injuries over a long period of time, as in silicosis,[14] and where negligent industrial operations result in the poisoning of the atmosphere and cause injuries which take long to mature as recognizable illness.[15] These statutes and decisions are a far cry from the view that the statute of limitations is capable of application as a simple chronological measure.

Borrowing statutes, like the statutes of limitations themselves, reflect an underlying policy. They have existed in various forms in many states,[16] and usually were intended to prevent a nonresident defendant from being subjected to an indefinite liability because the forum's period of limitations was suspended by tolling statutes during the defendant's absence from the jurisdiction.[17] Since in Pennsylvania the tolling provisions were inapplicable to defendants who were nonresidents at the time the cause of action arose and who had not entered the jurisdiction within the statutory period,[18] the Pennsylvania borrowing legislation must have had the broader purpose of assuring that the decision as to when the claim should be barred would be governed by the policy of the jurisdiction with the most significant interest in the claim,—the jurisdiction in which the "cause of action" "arose".[19] The Pennsylvania Borrowing Statute therefore early gave recognition to what is

now the modern principle of the importance of the interest of the respective jurisdictions in the underlying transaction. This principle is recognized, at least impliedly, in two of the cases cited by the majority. In Orschel v. Rothschild, 238 Ill.App. 353 (1925), not only had the plaintiff made the payment giving rise to the right of indemnity in Illinois whose statute of limitations the court applied, but the court also pointed out that the Illinois Borrowing Statute was inapplicable because the plaintiff was a resident of the forum. This in turn resulted from the restricted nature of the tolling statute which was inapplicable if neither party was a resident of the state when the cause of action accrued. In Runkle v. Pullin, 49 Ind.App. 619, 97 N.E. 956 (1912), while the court adopted the view that the time when a cause of action arises determines also the place where it arises, both parties to the transaction had resided in Indiana, but the defendant had become a nonresident when plaintiff paid the balance due on the note and remained a nonresident although he was within the jurisdiction at the time he was served. In the circumstances, therefore, Indiana had every possible contact with the transaction and almost every possible contact with the parties.

The Pennsylvania Borrowing Statute in speaking of a "cause of action" and where it "arose" has not undertaken to define these terms, but has left them to be given content by judicial refinement and clarification. This includes judicial developments in the future as well as those which have taken place in the past.

13. Schwartz v. Heyden Newport Chemical Corp., 12 N.Y.2d 212, 237 N.Y.S.2d 714, 188 N.E.2d 142, 4 A.L.R.3d 814 (1963).

14. Plazak v. Allegheny Steel Co., 324 Pa. 422, 188 A. 130 (1936). See also Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949).

15. Daniels v. Beryllium Corp., 227 F.Supp. 591 (E.D.Pa.1964), and 211 F.Supp. 452 (E.D.Pa.1962).

16. See Ester, Borrowing Statutes of Limitation and Conflict of Laws, 15 U.Fla. L.R. 33, 79–84 (1962), collecting and classifying the statutes of the various

states and territories, and listing 38 states as having borrowing statutes of general application.

17. George v. Douglas Aircraft Co., Inc., 332 F.2d 73, 77 (2 Cir.1964); Developments in the Law—Statutes of Limitations, 63 Harv.L.R. 1177, 1262–63 (1950); Ester, supra, at p. 42.

18. Act of May 22, 1895, P.L. 112, § 1, 12 Purdon's Pa.Stat.Annot. § 40.

19. See George v. Douglas Aircraft Co., Inc., 332 F.2d 73, 77 (2 Cir.1964) discussing an analogous New York statute of 1902.

While we may not alter the legislative command that the statutory period fixed by the foreign state shall prevail in the designated cases, nevertheless, what is a "cause of action" and when and where it "arose" are matters for judicial interpretation and should reflect current views of the relative significance of state interest as a determinant of decision.

I would hold, therefore, that the present cause of action for indemnity arose in Pennsylvania where there originated the contractual relationship between the parties out of which the right of indemnity arose, rather than in Florida where the accident occurred and satisfaction of the judgment was made which ripened the claim for indemnity and started the time of the running of the statute of limitations. Since it is agreed that the action was within the time fixed as the period of limitations in Pennsylvania [20] I dissent from the conclusion that the action was barred.

---

20. The action was brought within the four-year period prescribed by the Uniform Commercial Code (Act of April 6, 1953, P.L. 3, § 2–725, as amended, 12A Purdon's Pa.Stat.Annot. § 2–725) and, of course, within the six-year period prescribed for contract actions generally. Act of April 25, 1850, P.L. 567, § 7, 12 Purdon's Pa.Stat.Annot. § 31.