**Paul G. LUSTGARTEN and Jacqueline Lustgarten**

**v.**

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.; Krekstein, Shapiro, Bressler & Wolfson, P. C.; Michael R. Harris, Esq.; Bradford E. Beadle; and American Guaranty & Trust Company.**

Civ. A. No. 79–3481.

United States District Court, E. D. Pennsylvania.

Dec. 31, 1981.

Leonard Schaeffer, William H. Bishop, Pechner, Dorfman, Wolffe, Rounick & Cabot, Philadelphia, Pa., for plaintiffs.

Stewart Dalzell, Lynne E. Prymas, Philadelphia, Pa., for American Guaranty.

C. Clark Hodgson, Jr., Georganne Daher Terrill, Philadelphia, Pa., for Merrill Lynch and Bradford E. Beadle.

Bruce D. Lomardo, Philadelphia, Pa., for Krekstein, Shapiro.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

This is an action for professional malpractice. Plaintiffs Paul and Jacqueline Lustgarten, faced with the distressing prospect of owing the Government a sizeable sum of money in the way of a deficiency in their federal income tax return for 1971, seek to recover money damages. They allege that their predicament results from the negligence of the various defendants in rendering tax advice in connection with an ill-fated stock sale transaction. Defendants have moved to dismiss.

## I.

The allegations embodied in the complaint—allegations assumed to be true for the purpose of deciding defendants' motions—describe the following chronology of events:

In early 1971, Paul Lustgarten decided to sell his shares of stock of Cooper Laboratories, Inc., worth, at fair market value at the time of sale, $1,017,000. In order to structure an appropriate stock sale transaction, Mr. Lustgarten began to consult with, and eventually retained, the various defendants as expert financial and legal advisors. Although plaintiffs are Florida residents, these consultations were conducted in Philadelphia. Mr. Lustgarten's reasons for disposing of the Cooper stock were two-fold. He informed defendants that he sought to: (1) reduce his federal income tax liability by the fullest extent allowable under the law; and (2) generate sufficient income to support him and his wife during their imminent retirement years. Defendants advised Mr. Lustgarten that these twin goals would be best implemented by structuring the proposed transaction as an installment sale under section 453 of the Internal Revenue Code of 1954. By reporting the gain from the Cooper sale on the installment basis, plaintiffs would substantially reduce their income tax liability for the year of sale. These considerable tax savings would, in turn, generate the desired retirement income. To assure additional retirement security, defendants also suggested that the shares of Cooper stock not be retained by the purchaser but instead be resold. The proceeds of this subsequent sale would then be reinvested in shares of a mutual fund. These shares would be held in escrow until the initial purchaser liquidated his indebtedness to Mr. Lustgarten. Plaintiffs would thereby receive additional retirement income in the form of mutual fund dividends distributed by the escrow agent. Finally, Mr. Lustgarten was advised that a valid installment sale could be structured whereby plaintiffs' son, Bruce Lustgarten, would become the initial purchaser. In this way, defendants opined, the transaction would have the added benefit of providing for the Lustgarten children.

In April, 1971, after giving the matter their joint consideration, defendants advised Mr. Lustgarten that they could structure the stock sale transaction as described. They assured him that the transaction would: (1) be exempt from the registration requirements of the Securities Act of 1933; (2) meet the requirements of section 453 of the Code; and (3) satisfy the Lustgartens' personal objectives. Relying upon defendants' advice, Mr. Lustgarten instructed defendants to prepare the documents necessary to execute the installment sale of Cooper stock to his son Bruce. The deal closed on November 15, 1971. The gain on the sale was reported in plaintiffs' 1971 federal income tax return on the installment-sale basis.

Problems developed at some time after April 15, 1974. Plaintiffs were informed that the Internal Revenue Service had audited their income tax returns for the years 1971 and 1972 and, on the basis of this audit, had decided to disallow the installment sale of Cooper stock under section 453. The Service informed the Lustgartens that the entire gain from the sale should have been reported in full in their 1971 return. Plaintiffs consequently received a notice of deficiency for tax year 1971 in the amount of $345,810. On October 10, 1975, a written protest was filed with the Commissioner of Internal Revenue contesting the assessed deficiency. The protest was denied and a statutory notice of deficiency, dated July 23, 1976, was issued against plaintiffs by the Miami Appellate Office of the Internal Revenue Service.

Plaintiffs next petitioned the United States Tax Court for a review of the Commissioner's determination. On November 30, 1978, the Tax Court ruled against petitioners. *Lustgarten v. Commissioner*, 71 T.C. 303 (1978). The court's decision rested, in part, on the grounds that: (1) the placement of the funds in the escrow account resulted in constructive receipt by Paul Lustgarten of the entire purchase price in the year of sale; and (2) the documents

containing the terms of the sale placed too much control over the entire transaction in the hands of Mr. Lustgarten. As evidence of this control, the court took particular note of the fact that Bruce Lustgarten was required, within the terms of the sale, to purchase shares of the mutual fund as the sole security on the indebtedness owed to his father. On this basis, the court concluded that a true installment sale, within the meaning of section 453, could not occur. Plaintiffs allege that the defendants were, at all times, aware of these specific factors, yet continually assured the Lustgartens that the transaction would qualify as a valid installment sale under section 453.

The Lustgartens filed their complaint in this court on September 25, 1979, alleging, on the basis of the foregoing recital, that defendants are liable to them for their negligent failure accurately to advise plaintiffs of the tax consequences of the stock sale. In a separate count, plaintiffs also allege that defendants are liable under a contractual theory for their breach of implied promises to render accurate tax advice and properly to structure a valid installment sale transaction.[1]

Defendants contend that plaintiffs' claim is time-barred under what they deem to be the applicable statute of limitations and must therefore be dismissed. Because each of the various defendants advances similar arguments, their submissions will be considered as comprising a single motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.

The central issue presented in this motion is whether the applicable statute of limitations is Florida's or Pennsylvania's.

The parties agree that plaintiffs' claim accrued no later than July 23, 1976, the date when the statutory notice of deficiency was issued against plaintiffs by the Miami Appellate Office. Defendants claim that the applicable statute of limitations is the Florida statute barring professional malpractice claims filed more than two years after they accrue.[2] Plaintiffs contend that the applicable period of limitation is either Pennsylvania's four-year limitation on contract actions or Pennsylvania's six-year catch-all limitation covering causes of action not otherwise specifically provided for.[3] The parties' divergent views derive from their disagreement over the appropriate choice-of-law principles to be applied in this case.

In cases where federal court jurisdiction is predicated on the diversity of the citizenship of the parties, federal courts sitting in Pennsylvania are required to apply the same period of limitation as would a Pennsylvania state court. *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). For federal courts in Pennsylvania choosing between conflicting state

---

1. On March 27, 1980, further proceedings in this court were stayed pending a determination in the Fifth Circuit on plaintiffs' appeal from the Tax Court. In August, 1981, counsel for plaintiffs advised this court that the Court of Appeals for the Fifth Circuit had affirmed the Tax Court.

2. 7 Fla.Stat.Ann. § 95.11 (1974) provides that certain actions shall be commenced within two years, including:
   (4)(a) An action for professional malpractice, other than medical malpractice, whether founded on contract or tort; provided that the period of limitations shall run from the time the cause of action is discovered or should have been discovered with the exercise of due diligence; provided however, that the limitation of actions herein for professional malpractice shall be limited to persons in privity with the professional.

It is undisputed that plaintiffs were "in privity" with defendants within the meaning of section 95.11(4)(a).

3. Plaintiffs rely on the following provisions of 42 Pa.Cons.Stat.Ann. §§ 5525 and 5527 (Purdon's 1981 Pamphlet):
   § 5525. Four year limitation
   The following actions and proceedings must be commenced within four years: . . .
   (4) An action upon a contract implied in law. . . .
   § 5527. Six year limitation
   The following actions and proceedings must be commenced within six years: . . .
   (6) Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation).

statutes of limitation, the rule in *Guaranty Trust* necessarily implies application of the Pennsylvania choice-of-law principle which governs in the limitations context. *See Mack Trucks, Inc. v. Bendix-Westinghouse Automotive Air Brake Co.*, 372 F.2d 18, 20 (3d Cir. 1966), *cert. denied*, 387 U.S. 930, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967); *Jones & Laughlin Steel v. Johns-Manville Sales*, 453 F.Supp. 527, 531 (W.D.Pa.1978); *Gross v. McDonald*, 354 F.Supp. 378, 382 (E.D.Pa. 1973). *Cf. Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

That choice-of-law principle is a familiar one—namely, application of the appropriate Pennsylvania limitation period because Pennsylvania is the forum, *Freeman v. Lawton*, 353 Pa. 613, 617, 46 A.2d 205 (1946), subject, however, to the caveat that, when the cause of action accrues in a jurisdiction other than Pennsylvania, the limitation period to be applied is the appropriate limitation period of that other jurisdiction if it is shorter than Pennsylvania's. 42 Pa. Cons.Stat.Ann. § 5521(b) (Purdon's 1981 Pamphlet). *Mack Trucks, supra*, 373 F.2d at 20.[4]

In this case, the action is barred if Florida's two-year limitation period applies, but survives under either of the arguably appropriate Pennsylvania limitation periods (four and six years respectively). Accordingly, the dispositive question is whether plaintiffs' cause of action arose in Florida or Pennsylvania.

Defendants contend that Florida is the place where the cause of action arose, since—as all parties agree—it was the receipt there of the statutory notice of tax deficiency which spelled accrual of the cause of action. Plaintiffs argue for Penn-

sylvania on the ground that here is where the disputed transaction was structured and the alleged negligent behavior occurred. Relying on the doctrine of interest analysis adopted for Pennsylvania in Justice Roberts' landmark opinion in *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964), plaintiffs contend that Pennsylvania's interest in the claims underlying this litigation is much greater than Florida's.

Plaintiffs' argument cannot prevail, for it runs afoul of the controlling language of Judge Hastie's opinion for the Third Circuit in *Mack Trucks, supra*, 372 F.2d at 21, emphasis supplied:

> . . . Under the Pennsylvania borrowing statute a court is required to apply the statute of limitations of the state where the cause of action arose without regard to any contacts of any other state with the parties and their prior dealings. And certainly neither the *Griffith* case nor any other which we know suggests that the residence of the parties *or the place of their earlier dealings before the claim became suable* have any relevance to determining when or where the cause arose.

Nor can it be successfully contended that plaintiffs' claim *arose in Pennsylvania* on the date it *accrued in Florida*. For in *Mack Trucks* Judge Hastie was at pains to point out that the "when" and "where" of the cause of action's emergence are not severable (372 F.2d at 20):

> The Pennsylvania borrowing statute utilizes this concept of the arising of a cause of action in relation to place rather than time in order to specify the circumstances in which a Pennsylvania court shall apply another state's statute of limitations and to identify the appropriate

---

4. Section 5521(b) provides that:

   The period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim.

   The statute applied in *Mack Trucks* was § 5521(b)'s predecessor:

   39. Limitation of action in foreign state a bar here

When a cause of action has been fully barred by the laws of the state or country in which it arose, such bar shall be a complete defense to an action thereon brought in any of the courts of this commonwealth.

12 Pa.Stat.Ann. § 39 (1953). Because the two statutes are substantially similar in language and purpose, § 5521(b)'s "accrued" shall be accorded treatment no different from the previous statute's "arose."

state. We think that the concept of when a cause arises and the concept of where a cause arises, both used to aid in the application of statutes of limitations, are *in pari materia.* In other words, the cause arises where as well as when the final significant event that is essential to a suable claim occurs.

Under the equation set out in *Mack Trucks,* then, the place of accrual is determined by the time of accrual. In this case, as noted above, the parties agree that plaintiffs' claim accrued on July 23, 1976, the date when plaintiffs received the statutory deficiency notice. The Florida statute, by its own terms, provides that the action for professional malpractice shall run or accrue "from the time the cause of action is discovered or should have been discovered with the exercise of due diligence." *See* note 2, *supra. See also Edwards v. Ford,* 279 So.2d 851, 853 (Fla.1973), holding, in an action for attorney malpractice, that "the event which triggers the running of the statute of limitations is notice to or knowledge by the injured party that a cause of action has accrued in his favor, and not the date on which the negligent act which caused the damages was actually committed." *Accord Green v. Adams,* 343 So.2d 636 (Fla.App. 1977), *cert. denied,* 353 So.2d 673 (Fla.1977). The rule is no different in Pennsylvania. The Pennsylvania "discovery rule" delays the accrual of the action from the time of the negligent conduct to a time when the injury becomes known or knowable. *Acker v. Palena,* 260 Pa.Super. 214, 393 A.2d 1230 (1978) *(per curiam ).* The parties here agree that the alleged negligent conduct of defendants was not discovered until July 23, 1976.

Wherefore, I find that plaintiffs' claim accrued, within the meaning of the Pennsylvania borrowing statute, in Florida on July 23, 1976. Under the applicable Florida statute of limitations, claims for professional malpractice, whether based on tort or contract, must be commenced within two years after they are discovered. Plaintiffs' action was commenced in this court on September 25, 1979, almost three years after the claim was discovered. Plaintiffs' claim

is therefore time-barred. Accordingly, I will enter an order granting defendants' motion to dismiss.